[Civ. No. 4480. Second Appellate District, Division Two.—June 30, 1927.]

P. H. GREER, Respondent, v. LOS ANGELES ATHLETIC CLUB (a Corporation), Appellant.

O'Melveny, Millikin, Tuller & MacNeil, Sayre MacNeil and Paul E. Schwab for Appellant.

McCarthy, Nolan & Freston for Respondent.

MURPHEY, J., *pro tem.*—This is an appeal by the Los Angeles Athletic Club from a judgment in favor of the plaintiff in an action for damages for failure to return to plaintiff a package deposited with the defendant. Judgment was for the sum of $1,253.83, with interest at seven per cent per annum. The defendant is a social organization used by the members and their guests. In addition to the

ordinary facilities furnished by it, the club maintained sleeping rooms which were rented to members of the club, for which a consideration in addition to the regular dues of the club was required. The plaintiff was a member in good standing in the club and had resided in one of the rooms of the club from the early part of 1919 until after the incident resulting in this litigation. Defendant also kept a fireproof safe in the clerk's office on the main floor for the safekeeping of packages deposited therein by lodgers or other members of the club for which no special charge was made.

The court found in favor of the plaintiff and bases its conclusion in that regard upon: (1) The fact that the defendant was a lodging-house keeper, and (2) that in accepting the package to be deposited in its safe, it was a bailee for hire. The appellant contends that the judgment should be reversed primarily upon two specifications: (1) That appellant as a lodging-house keeper was not liable for more that $250, not conceding, however, that it was liable for anything; (2) if it was a bailee for hire the liability would be limited to the amount the defendant was informed by the depositor was contained in the deposit package or what it had reason to suppose the deposit to be worth, and that in no event could the liability exceed the sum of $250.

■ Taken in the order in which they have been above named, the defendant contends that since the relationship between the plaintiff and defendant was that of lodger and lodging-house keeper, and since the defendant kept a fireproof safe and gave notice to plaintiff, as contemplated in section 1860 of the Civil Code, it follows that the liability of the defendant, if any, is governed by that section which provides: ''If an innkeeper, hotel keeper, boarding-house or lodging-house keeper, keeps a fireproof safe and gives notice to a guest, boarder or lodger, either personally or by putting up a printed notice in a prominent place in the office or the room occupied by the guest, boarder or lodger, that he keeps such a safe will not be liable for money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small compass, unless placed therein, he is not liable, except so far as his own acts shall contribute thereto, for any loss of or injury to such articles, if not deposited with him to be placed therein, nor in any case

for more than the sum of two hundred and fifty dollars for any or all such property of any individual guest, boarder or lodger, unless he shall have given a receipt in writing therefor to such guest, boarder or lodger." Appellant insists that no receipt was given to respondent.

Many cases, and definitions by text-writers and lexicographers, are cited to determine the meaning of the word "receipt," as used in the foregoing section of the code, all of which in our judgment are fully answered and disposed of by supplementing the detached portion of the package envelope hereinafter referred to, with the printed matter remaining on said envelope and being part thereof, printed on the body thereof in the words following: "Directions for using this envelope. After the depositor has placed his money or valuables in the envelope and sealed it, have him sign his name in full on check A, and then tear off and give him check B, to keep as a receipt. When he calls for his deposit, cause him to put his signature on check B, and then compare it with that on check A; if the result is satisfactory, deliver the envelope, and date and file the two checks as receipts." The portion of the paper referred to above was delivered to the defendant at the time of making his deposit and was in words and figures as follows: "Check B. Date ........ 192..... Los Angeles Athletic Club. No. 304. Los Angeles, Calif. Depositor is to sign here only when he withdraws his deposit. . . . Deliverable to the owner only." The evidence shows that at the time the plaintiff deposited his package with one of the clerks in the office of the defendant there was delivered to him the above slip of paper which was detached from the envelope into which the deposit was placed.

Section 1962 of the Code of Civil Procedure, subdivision 3, reads as follows: "The following presumptions, and no others, are deemed conclusive: . . . 3. Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." This writing was regarded and considered as a receipt by all parties to the action. The directors evidently so considered it when they authorized and

directed the preparation of the envelope to be used by persons depositing money or valuables in its safe. The plaintiff and the employees of the club constantly in their testimony referred to the writing as a receipt. The portion of the envelope taken by the defendant bore a duplicate number corresponding to the number on the portion of the deposit envelope retained by the officers of the club, and when returned, signed, and dated by the depositor entitled him to the envelope and its contents. Nothing on the envelope requires the depositor to state the amount of money or the value and character of valuables, if such there were. This presumably was the intention of the officers of the club and it was probably their purpose for good reasons, not to have disclosed to its employees the amount or value of the contents of these deposit packages. They evidently regarded it as unnecessary and probably concluded that it would avoid temptation. Certainly, it would have served no good purpose to have disclosed to the clerk or clerks at the desk the contents and value of packages as it is not disclosed in the record that they or any of them were or was clothed with any discretionary powers to refuse a package because in amount or value it was in excess of any stipulated limitation, and it cannot fairly be said, and the record does not disclose the fact to be, that such information had it been given would have caused the employees or officers of the club to exercise any greater degree of care in its safekeeping. The receipt as given was such as a matter of law. A receipt in its common use is nothing more than a bare acknowledgment of having received something. In the case of *California Packers Co.* v. *Merritt Fruit Co.*, 6 Cal. App. 507, 510 [92 Pac. 509], this court says: "It was to defendant a mere receipt for money. The fact that it stated that the money received was in full of all claims and demands must be held to mean the claims and demands for which the money was given in satisfaction. A receipt may always be explained, and even the amount of money stated in the receipt to have been paid may be shown by parol evidence to have been a different sum. If the amount or sum mentioned in the receipt may be contradicted by parol, there is no reason why the words 'All claims and demands,' may not also be contradicted or explained. One word in a receipt is no more sacred than an-

other. A receipt is not intended to give an exclusive memorial, and for this reason the authorities all hold that the facts may be shown. A receipt is only a written admission of a transaction independently existing, and, like other admissions, is not conclusive. It is evidence—and often very convincing evidence—against the party who gives it, but it is not conclusive." In *Hickox* v. *Naugatuck R. R. Co.,* 31 Conn. 281 [83 Am. Dec. 143], the court says: "The check is in the nature of a receipt, and may be given and received at any time when the convenience and custom of the company dictates. It is not the contract, but evidence of the ownership, delivery and identity of the baggage." There are many other cases holding to the same effect. Greenleaf on Evidence, section 305, says: "In regard to receipts, it is to be noted that they may be either mere acknowledgments of payments or delivery, or they may also contain a contract to do something in relation to the thing delivered. In the former case, and so far as the receipt goes only to acknowledge payment or delivery, it is merely *prima facie* evidence of the fact and not conclusive, and therefore the fact which it recites may be contradicted by oral testimony." In the Interstate Commerce Act, section 20k (4 Fed. Stats. Ann. 506 [U. S. Comp. Stats., § 8640a]), the following language appears: "That any common carrier, railroad, or transportation company, subject to the provisions of this act, receiving property for transportation from a point in one state or territory or the District of Columbia, to a point in another state, territory, District of Columbia, or from any point in the United States to a point in adjacent foreign country, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property. . . . " In commenting upon this language the supreme court of the United States in *Boston & Maine R. R.* v. *Hooker,* 233 U. S. 97 [Ann. Cas. 1915D, 593, L. R. A. 1915A, 450, 58 L. Ed. 868, 879, 34 Sup. Ct. Rep. 526, see, also, Rose's U. S. Notes], speaks as follows: "We do not think the requirement of the Carmack amendment, that a railway company receiving property for transportation in interstate commerce shall issue a receipt or bill of lading therefor, required other receipts than baggage checks, which it is shown were issued when the baggage was re-

ceived in this case. When the amendment was passed, Congress well knew that baggage was not carried upon bills of lading, and that carriers had been accustomed to issue checks upon receipt of baggage. We do not think it was intended to require a departure from this practice when the matter was placed under regulation by schedules filed and subject to change for unreasonableness upon application to the commission. Such checks are receipts, and there is no special requirement in the statute as to their form." It is self-evident that a receipt of the character here disclosed would not be required to measure up to the formalities and specifications of a warehouse receipt. In such receipts a description is essential in order that the negotiable character of the instrument may be effectuated. They are more than receipts, they are contracts. In view of the printed matter on the package envelope and the function the slip of paper was designed to accomplish, we are strongly of the opinion that had it when given to the defendant borne simply the duplicate number with a direction to return the same and identify it as required by the package envelope, it would have measured up to all of the requirements of a receipt.

There is some discussion that the deposit was returned and some doubt expressed as to the sufficiency of the evidence to support the trial court's finding as to the amount of the deposit. The trial court's conclusion as to each of these matters is adverse to the appellant. It found that the package had never been returned to the plaintiff and that the amount contained in the package was a definite and specific sum, to wit, $1,253.80. As to the first contention, the evidence is contradictory, and as to the second point the contention is largely based on inference as against the direct and positive testimony of the plaintiff together with certain corroborative circumstances. Under such circumstances the rule is too well settled to warrant discussion that the appellate court will not attempt to weigh the evidence with a view either to justifying or discrediting the findings of the trial court.

It is next contended by the defendant that if it is a bailee for hire instead of a lodging-house keeper the liability is limited to the amount the defendant was informed by the depositor or had reason to suppose the deposit to

be worth, and in any event not in excess of the sum of $250. In support of this position, section 1840 of the Civil Code is quoted, as follows: "The liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor or has reason to suppose, the thing deposited to be worth," it being the defendant's contention that there was no evidence whatever that the defendant was informed by the plaintiff or anyone at the time of the deposit of the amount contained in the package, nor is there any evidence from which it can be concluded that the defendant had reason to suppose that the package was worth more than $200 or $250, and that therefore the finding of the trial court that the defendant knew the package contained a large amount of money and that the defendant had reason to suppose it contained as much as $1,253.80 is not sustained by the evidence. Furthermore, it is the contention of the appellant that the court having found that it was a lodging-house keeper, the contention of the plaintiff that it was a bailee for hire is inconsistent with such finding. We are unable to agree with this contention. The plaintiff was a member of the club and incidentally a roomer in the club-house. In either of these capacities he was entitled to all the privileges and benefits it afforded. He was not required, in making his safety deposit, to indicate in what capacity he was acting, and we are unable to see any inconsistency in invoking every instrumentality recognized by law in asserting his right to recover his property. As a member of the club, the law afforded him the right to recover as a bailor. As a renter of a room, it afforded him the right to recover as a pay guest in a lodging-house. If he fails in one and makes good in another he has established a cause of action. If he succeeds in establishing both he has likewise accomplished the single purpose of recovering the property he has deposited. It may be stated that there was no special charge for the service rendered by the club to its members in keeping a safe for the safekeeping of the valuables and money belonging to its members. This service, if paid for at all, was a portion of the service for which the members paid dues to the club, and in this connection the respondent calls attention to the fact that the superintendent of the club testified that the acceptance of the packages and the

caring for them was a part of the service which was rendered to the members of the club in consideration of the dues paid by them. Mr. Hall, the assistant secretary, testified that this depositary service was a part of the service rendered to members, partly paid for from dues, and on cross-examination he testified: "The club has not given the members everything that they have wanted. It has given them what it has thought would be necessary to run a decent club." The superintendent testified to the same effect. It is further evident from a direction printed on the back of the deposit envelope as follows: "Below are directions for using this envelope. After the depositor has placed his money or valuables in the envelope and sealed it, have him sign his name in full on check A and then tear off and give him check B to keep as a receipt." It is apparent, therefore, that a part of the service to be rendered by the club in consideration of the dues of the members was caring for money and valuables when deposited with it in the proper manner and in failing to provide any blank or space on the envelope where the character or amount of the deposit was to be designated, it is apparent that it was the intention of the club officers to receive such amounts and such valuables as a member might in his discretion see fit to deposit. This it no doubt had a right to do, and in doing so assumed the responsibilities necessarily consequent thereon. In the case of *Cussen* v. *Southern California Savings Bank*, 133 Cal. 534 [85 Am. St. Rep. 221, 65 Pac. 1099], the supreme court of this state, having discussed the conduct and liability of depositaries for hire in a manner that is very enlightening in determining the questions involved in this appeal, said: "It was required to use that degree of care in the protection of this property from thieves without and thieves within, and it was required to use the same degree of care in the selection of its employees, and in the supervision of their conduct after they were employed. It is said in *Preston* v. *Prather*, 137 U. S. 604 [34 L. Ed. 788, 11 Sup. Ct. Rep. 162]: 'Persons, therefore, depositing valuable articles with them, expect that such measures will be taken as will ordinarily secure the property from burglars, and from thieves within, . . . and also that they will employ fit men, both in ability and integrity, for the discharge of their duties, and re-

move those employed whenever found wanting in either of these particulars. An omission of such measures would in most cases be deemed culpable negligence so gross as to amount to a breach of good faith, and constitute a fraud upon the depositor.' (See, also, *Gray* v. *Merriam,* 148 Ill. 179, 190 [39 Am. St. Rep. 172, 32 L. R. A. 769, 35 N. E. 810].) In this case it was established by plaintiff's evidence that his money was abstracted from the vaults of defendant while on deposit. Under these circumstances the burden was cast upon defendant of showing that it used proper care in the safekeeping of the plaintiff's property. In *Lockwood* v. *Manhattan Storage Co.,* 28 App. Div. 68 [50 N. Y. Supp. 974], it was said: 'The ordinary rule established by numerous authorities is, that when plaintiff has proved the deposit of his goods, and a failure of the defendant to produce the same on demand, he has established a *prima facie* case, and the defendant must excuse his failure to produce, by bringing himself within one of the recognized exceptions.' (See, also, *Claflin* v. *Meyer,* 75 N. Y. 262 [31 Am. Rep. 467].) . . . Section 1840 of the Civil Code declares: 'The liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose the thing deposited to be worth.' Defendant relies upon this section of the code, but in its provisions we see no relief for it. Here plaintiff did not inform defendant as to the value of the deposit. Neither does defendant claim that it had reason to suppose the thing deposited was of less value than it was in fact. Indeed, the very manner of conducting this somewhat peculiar line of business contemplates that the bailee shall not know the value of the thing deposited. In substance, he closes his eye to the value and character of the deposit, and this fact seems to be one of the controlling features in the transaction of this character of business. Under the circumstances, it is apparent that section 1840 of the Civil Code can have no application to the facts of this case.' " In the case of *Sulpho-Saline Bath Co.* v. *Allen,* 66 Neb. 295 [1 Ann. Cas. 21, 92 N. W. 354], the supreme court of Nebraska says: "In *Woodroof* v. *Painter,* 150 Pa. St. 91 [30 Am. St. Rep. 786, 16 L. R. A. 451, 24 Atl. 621], a retail dealer in clothing was sued for the value of a watch which, at the direction of the clerk, he had placed in a drawer while

trying on a suit of clothes. The court said (page 452): 'When the defendants opened a retail clothing store they thereby invited the public to come into their place of business and purchase clothing in the usual manner; and when they extended this invitation they assumed some duty to the people who should respond to it. Even the householder who permits the use of a path leading to his house is deemed to hold out an invitation to all people who have any reasonable ground for coming thither to pass along his pathway, and is therefore held responsible for neglecting to fence off dangerous places. 1 Addison, Torts, 203. So, too, a shopkeeper is liable for neglect on leaving a trapdoor open without any protection by which his customers receive injury. *Parnaby* v. *Lancaster Canal Co.*, 11 Ad. & E. 223, 39 E. C. L. 54. In like manner it cannot be doubted that, if these defendants had maintained or permitted a danger of any kind in their store, and by reason of it the plaintiff had sustained bodily injury, they would have been answerable to him for the consequences. In such case they would be said to have been guilty of negligence—guilty of a neglect of duty which they owed to the customer; but I apprehend that the duty neglected would arise from an implied contract that, if customers would come to their store, no harm that could reasonably be averted should overtake them, and the consideration for such promise would be the chance of profits from their patronage. . . . The principles which govern that relation are briefly and clearly stated by Judge Story in his work on Bailments: 'When the bailment is for the benefit of the bailor, the law requires only a slight diligence on the part of the bailee, and of course makes him answerable only for gross neglect. When the bailment is for the sole benefit of the bailee, the law requires great diligence on the part of the bailee, and makes him responsible for slight neglect. Manifestly, the bailment, in a case like the present, is of the latter class, for, while the customer pays nothing directly, or *eo nomine*, for the safe-keeping of his effects, the dealer receives his recompense in the profits of the trade of which the bailment is a necessary incident. It was upon this principle that Lord Holt said, in *Lane* v. *Cotton*, 12 Mod. 473, 483, an action was sustainable against an innkeeper for the loss of a guest's goods, and that the Court of Appeals affirmed

the judgment of the Court of Common Pleas of the city of New York in *Bunnel* v. *Stern,* 122 N. Y. 539 [19 Am. St. Rep. 519, 10 L. R. A. 481, 25 N. E. 910], *supra.*'' The court further says: ''Having received the property as bailee, the burden was on the defendant alone to show that it was lost, if such was the case, without negligence upon its part.'' These cases are clear expressions of the law applicable to the situation developed in the instant case where any depositary accepts property as incidental to services rendered by the depositary, holding that the relationship between the parties is one of mutual benefit and the depositary is a bailee for hire.     In his pleadings the plaintiff raises no issue of negligence, that issue having for the first time been injected into the case by the answer of the defendant. The logic of the foregoing cases under such circumstances requires the defendant to assume the burden, having failed to return to the plaintiff his package, of showing that negligence may not be fairly imputed to it. The case of *Perera* v. *Panama-Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454], cited by appellant, is readily distinguished from the case at bar and the cases hereinbefore discussed. In that case it is conceded by the plaintiff that he must establish the negligence of the defendant. The defendant received jewelry from the plaintiff in locked showcases furnished by the plaintiff which defendant was to sell for the plaintiff on a commission. Plaintiff's representatives at all times knew of the conditions under which the property was being cared for. The locks on the showcases were not of the accepted type and were easily opened. The case has more the aspect of a joint venture than a bailment for hire. The facts are so entirely divergent from the facts in the instant case as to serve no purpose in the solution of the problem. There is no satisfactory evidence either way as to the knowledge of the club or as to its supposition touching the amount of money likely to be deposited by the plaintiff. There is evidence in the record to the effect that the plaintiff was a business man in the city of Los Angeles; that during the year preceding this transaction his firm had done business to the extent of over $7,000,000, and that he himself had an allowance of $30,000 per year as president of the corporation, and that he frequently carried in excess of $1,000 upon his person and had

upon a previous occasion deposited a large amount of money with the club. This issue was tendered by the defendant and no evidence was offered in support of the issue so tendered. The conduct of the defendant in failing to require any specification on the deposit envelope may fairly be construed to mean that a member might deposit any amount or value at his discretion. When it failed to return the deposit it was *prima facie* guilty of negligence and it at once devolved upon the defendant to meet the issue. In the absence of any showing in this regard and in the absence of any limitation on deposits we are not prepared to say that from all the circumstances of the case and the presumptive knowledge attributable to the officers of the club the court was not justified in finding that the defendant knew that plaintiff deposited a large amount of money in said package, or had reason to suppose that the amount of said deposit was as much as claimed by respondent. There is evidence in the record independent of what has been heretofore said upon which a finding of defendant's negligence may fairly be predicated. The club itself kept from $1,000 to $3,000 in cash in a safety box in the safe, which the evidence discloses was always kept locked. On the other hand, the compartments in which the safety deposits were kept were generally open, as was the door to the safe. The degree of care which is necessary to avoid the imputation of bad faith is estimated by the degree of care which the depositary would use toward its own property of a similar kind. In 4 L. R. A. 1215, note, it is said:

"Presumptions arising from fact that depositary used the same care as to his own property. The degree of care which is necessary to avoid the imputation of bad faith is estimated by the carefulness which the depositary used toward his own property of a similar kind. *Lloyd* v. *West Branch Bank*, (1850) 15 Pa. 172 [53 Am. Dec. 583, 1 Am. Neg. Cas. 574] ; *Ray* v. *Bank of Kentucky*, (1874) 10 Bush (Ky.) 344. It will be difficult to presume fraud where the bailee was equally a loser with the bailor. *McLean* v. *Rutherford*, (1843) 8 Mo. 109. A gratuitous bailee is bound to the exercise of good faith; and if he accepts the goods entrusted to him with less care than he keeps his own of the same kind, this is a circumstance from which a jury might well

infer a want of good faith; but the keeping of them as his own an argument of his honesty. *Griffith* v. *Zipperwick*, (1876) 28 Ohio St. 388 [1 Am. Neg. Cas. 545]. It is not enough that a bailee takes the same care of the property bailed as he does of his own; the conduct of men of common sense, as a class, in the care of their own property being the standard. *Merchants National Bank* v. *Guilmartin,* (1893) 93 Ga. 503 [44 Am. St. Rep. 182, 21 S. E. 55].''

In this behalf the appellant contends that the respondent was negligent and in support of this contention quotes from the testimony of respondent as follows:

''The clerk then tore off the receipt and handed it to me, took the envelope and I saw him place it in the large compartment in the safe. It was not locked and the safe doors were open. There was another door to this compartment within the large safe. The large safe doors were opened. I do not think that I ever saw them closed. The large safe doors were always open when I went to the club but the small doors were closed.''

It would seem that this testimony fails to support the contention of the appellant. In the case of *Dieterle* v. *Bekin,* 143 Cal. 683 [77 Pac. 664], the plaintiff pleaded the delivery of property to defendant for storage, a demand for possession, and the refusal to comply with the demand. Defendant, in addition to the denials, pleaded that the property was without fault or negligence of the defendant destroyed by fire. The trial court found that the goods were destroyed by fire, the origin of which was unknown, and gave judgment for the defendant, which was reversed on appeal. In that case the court said:

''The plaintiffs made out their case when they established to the satisfaction of the court the allegations of their complaint. It was then for the defendant to establish the allegations of his affirmative defense if he could do so. The court has found that he was grossly negligent in the matter of exposing the property to loss by fire, and that the property was destroyed by fire of an unknown origin. The facts found suggest at least a probability that the fire came from the same source from which emanated the 'more than ordinary risk' under which the property was so negligently placed by the defendant. Under the circumstances disclosed by the findings the burden which the defendant

has assumed in his affirmative defense was upon him to satisfy the court that the fire did not come from this source.''

This principle is further elucidated in the case of *Wilson* v. *California etc. R. R. Co.*, 94 Cal. 172 [17 L. R. A. 685, 29 Pac. 861], where the supreme court says: ''Had the defendant been sued as a tort-feasor, and been charged in the complaint with negligence whereby plaintiff's goods were destroyed by fire, the burden of proving the alleged negligence would have been upon the plaintiff (*Wilson* v. *Southern Pacific R. R. Co.*, 62 Cal. 171); but not so where, as in this case, the action is upon the carrier's contract to carry and deliver the goods; the alleged breach being a failure to carry and deliver according to the contract, and the defense being that the goods were destroyed by fire, without the carelessness or negligence of the defendant. As a general rule, the burden is on the defendant to prove new matter alleged as a defense (*Osborn* v. *Hendrickson*, 8 Cal. 31; *Piercy* v. *Sabin*, 10 Cal. 22 [70 Am. Dec. 692]; *Kuhland* v. *Sedgwick*, 17 Cal. 124; *Bryan* v. *Maume*, 28 Cal. 244; *Mulford* v. *Estudillo*, 32 Cal. 136), even though it requires the proof of a negative. 'It makes no difference, therefore, whether the actor is plaintiff or defendant, so far as concerns the burden of proof. If he undertakes to make a case, whether affirmative or negative, this case must be made out by him, or judgment must go against him. Hence, it may be stated, as a test admitting of universal application, that whether the proposition be affirmative or negative, the party against whom judgment would be given as to a particular issue, supposing no proof be offered on either side, has on him, whether he be plaintiff or defendant, the burden of proof, which he must satisfactorily sustain. If there is a case made out against a defendant, on which, if the plaintiff should close, a judgment would be entered against the defendant, then the defense has on him the burden of proving a case by which the plaintiff's case will be defeated.' (Wharton on Evidence, sec. 357, and authorities cited.)''

There is some contention that the property was stolen. No evidence was offered from which a finding to that effect could be sustained. The further disposition of this property after leaving the clerk's hands has never been accounted for. ■ The trial court awarded to the plain-

tiff interest from the date of the demand for the return of the deposit. Appellant contends that in awarding damages for the amount deposited, the court exhausted its power to award anything beyond that amount. This matter appears to be clearly covered by section 3287 of the Civil Code, which reads as follows: "Persons Entitled to Recover Damages May Recover Interest Thereon. Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

No doubt a different rule applies in replevin cases where damages are allowed for the value and wrongful detention. The cases cited by appellant are to this effect and, as we view the matter, have no application to the situation involved in this litigation.

Judgment affirmed.

Craig, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 29, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 29, 1927.