[Civ. No. 15333. Second Dist., Div. Three. Mar. 4, 1947.]

CATERINA SAPPA, Respondent, v. PETER CRESTETTO, as Executor, etc., Appellant.

H. E. Bianchi for Appellant.

F. M. Andreani for Respondent.

DESMOND, P. J.—Plaintiff sued upon a rejected claim against the estate of Giuseppe Crestetto, who died on December 13, 1943, and obtained verdict and judgment for the amount of the claim. Defendant appeals. The demand, as stated in the claim, was for $5,000 as the "balance of account for nursing, personal care, attendance, companionship, board and lodging September 20, 1922 to December 10, 1943."

It was alleged in the complaint, "That on or about the 20th day of September, 1922 the Plaintiff and said decedent, Giuseppe Crestetto, entered into an oral agreement and understanding whereby the Plaintiff agreed to render, perform and furnish certain constant and continuing personal work, labor and services consisting of furnishing board, lodging, personal care, attendance, companionship and nursing to, of and for the said decedent and that the said Giuseppe Crestetto would compensate the Plaintiff and pay therefor at the termination thereof, to wit: on or before the death of said decedent; that further *is* was by said parties agreed that said decedent would pay to Plaintiff some nominal amount periodically on account of said work, labor and services; and further in connection with the foregoing the Plaintiff alleges that during the entire period intervening between said 20th day of September, 1922 and said 10th day of December, 1943, she rendered, conferred and furnished said work, labor and services under the terms of said agreement and understanding; that said work, labor and services were constant, continuous and uninterrupted during said period of time and that during all of said period of time the same were received, enjoyed and accepted by said decedent." It was further alleged that Crestetto had paid upon account from

$25 to $30 per month and that there was a balance due of $5,000. There was no allegation as to the amount agreed to be paid, nor as to the reasonable value of the services. A bill of particulars, furnished by plaintiff upon demand of appellant, is reproduced at pages 12 and 13 of respondent's brief and shows in detail the various items which form the basis of the creditor's claim.

The points on appeal are (1) that the complaint failed to state a cause of action; (2) that the claim was barred by the statute of limitations; (3) that an accord and satisfaction set up in the answer was a bar; (4) insufficiency of the evidence to establish an agreement for additional compensation; (5) that the instructions were erroneous, and (6) that the verdict was excessive.

Under the first point it is argued that the agreement pleaded was void because it was not in writing and was not to be performed within a year from the making thereof and within the lifetime of the promisor. (Code Civ.Proc., § 1973; Civ.Code, § 1624.) The argument assumes that the action was based upon the oral agreement. This is not the case. It was not alleged that Crestetto agreed to pay any certain amount and, in the absence of an agreement as to the amount to be paid, there was no enforceable express contract. The cause of action was in *quantum meruit*. It was founded on the principle that where services are rendered for compensation, without a valid agreement as to price, there is an obligation to pay their reasonable value, and that if they are rendered continuously, without a valid agreement as to time of payment, there is an obligation to pay when they have been completed. The right of recovery under such an arrangement has been affirmed many times. (*Wax* v. *Adair,* 16 Cal.App.2d 393 [60 P.2d 904]; *Turell* v. *Anderson,* 16 Cal. App.2d 445 [60 P.2d 906]; *Seib* v. *Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281]; *Doolittle* v. *McConnell,* 178 Cal. 697 [174 P. 305]. See, also, additional cases listed in *Long* v. *Rumsey,* 12 Cal.2d 334 at 342 [84 P.2d 146].) The purpose of alleging that Crestetto agreed to pay for the services was to show that they were not rendered gratuitously. An allegation that they were rendered at his special instance and request would have served the same purpose, since an obligation to pay would have been implied. The allegation that they were to be paid for "at the termination thereof, to wit: on or before the

death of decedent," served to show that they were not to be paid for as they were rendered. It was the same as if it had been alleged that no time was agreed upon when payment would be made, since the presumption then would be that payment for the continuous and uninterrupted services became due when they were terminated. The pleading of the agreement merely served the purpose of enabling plaintiff to offer proof of conditions under which she would be entitled to recover the reasonable value of her services, at the time they were completed, and was not relied upon as the basis of defendant's liability.

There is no merit in the plea of the statute of limitations. No cause of action arose until the services were terminated by the death of Crestetto.

Under the point of insufficiency of the evidence, it is contended that there was no evidence of any agreement between the parties under which Mrs. Sappa was to render services, and no evidence as to the value of the board, lodging and services rendered. Such evidence as there was of an agreement is to be found in the testimony of the witnesses, other than Mrs. Sappa, who was incompetent to testify as to the terms of any agreement, and in the circumstances under which Crestetto lived in Mrs. Sappa's home as a boarder. He came from San Francisco and took up his home with Mr. and Mrs. Sappa in 1922. The Sappas were subsequently divorced and Crestetto continued to room and board with Mrs. Sappa. Both were steadily employed, Crestetto in a terra cotta factory and Mrs. Sappa in an overall factory. Crestetto paid Mrs. Sappa $25 per month, at first, and gradually increased it to $30. He owned several houses and was frugal and prosperous. He not only received board and lodging, but also the domestic services of Mrs. Sappa which usually go with home life. She laundered and mended his clothes, nursed him through various illnesses and accidental injuries, she was his constant companion, a good housekeeper, a devoted friend, and he had complete confidence in her. She occasionally attended to his banking, collected some of his rents, performed manual labor in his several houses, and at times carried his real property in her name. He expressed himself as happy and satisfied in the home she provided for him and spoke of her to their friends as a good and faithful

woman and friend. For 21 years he lived this peaceful and contented life and had no other home. The arrangement which he had for Mrs. Sappa's compensation appears to have been the subject of frequent discussion with his friends. Teresa Benedetto had been his friend since their childhood in Italy. Crestetto had been a boarder with the Benedetto family in Alameda for 13 years. Mrs. Benedetto came to Los Angeles in 1921, and Crestetto brought Mrs. Sappa to her house in 1922. A month or two later Crestetto told her "he was paying $25.00 a month and then if he died or moved away he would give her the rest." She testified, "I told him, 'you don't pay enough' and he said, 'Well, I don't pay right away; if I move or would pass away I pay the rest." Throughout the testimony of this witness many such conversations with Crestetto were related and he made many statements such as, "I am going to pay when I go away, or in the end"; "if I don't pay it now I pay it afterwards." He also said repeatedly that he would leave Mrs. Sappa money so that "she don't have to worry for her life." Statements to the effect that he would pay more and at some later time were made to Mrs. Benedetto "50 or 100 times" and upon many occasions in the presence of Mrs. Sappa, who would say only that she was satisfied. Mrs. Hodgson testified that he said, "She always did a lot for him, that when he passed away or when he went away from that home he would always see she was left enough so she would never have to go out and work." Crestetto spoke in the highest terms of Mrs. Sappa to his niece, Mary Vironda, and said that if anything happened to her he would take care of her. William Benedetto testified to similar statements made by Crestetto when the witness' mother questioned him as to what he was going to do about Mrs. Sappa.

The jury concluded, from the circumstances of the parties and the declarations of Crestetto, that he had agreed with Mrs. Sappa that he would pay her further remuneration when her services were terminated and that she rendered the services in reliance upon his agreement; also that the services for the period September 20, 1922, to December 10, 1943, were worth $5,000 more than had been paid on account. Such findings are implicit in the verdict, but we cannot accept the view that the period of reckoning, twenty-one years, was correct, for the reason that a settlement was reached between Mrs.

Sappa and Mr. Crestetto which barred any recovery for the period preceding January, 1940. This appears from a document, the genuineness and due execution of which were admitted by the plaintiff in the pleadings and orally before the court. It is signed on one side by Mrs. Sappa and on the other by Crestetto and was introduced in evidence at the trial. It reads as follows:

"I, undersigned, declare that during the past 15 years I have received from Giuseppe (Joseph) Crestetto the amount of 28 to 30 dollars monthly for house rent, etc. therefore I declare that as today I am fully *satisfied* and I am not expecting any other compensation from G. Crestetto.

"This writing serves as a receipt.

"Los Angeles, California, January 1940.
 "Caterina Sappa"

and on the reverse side,

"This receipt does not deprive Mrs. Caterina Sappa of the right to receive $500—after I am passed away—as provided in Testament dated December 25, 1937.

"Giuseppe Crestetto fu Domenico

"(Joseph Crestetto son of the late Domenic)."

Why this instrument was signed in January, 1940, is unknown. It may have been signed at the time in 1940 when, according to the testimony, he was very sick and as the result of arguments concerning the sufficiency or inadequacy of the payments made by Crestetto for the period beginning in 1925, fifteen years preceding its date, or possibly Crestetto believed that he was entitled to the "receipt" in consideration of his having made provision in his will for Mrs. Sappa, or perhaps an additional cash payment was made at the time. It appears from the document that the writing on the face thereof was made by the hand of the person who signed it, Caterina Sappa. If that is so she is not permitted to impugn it or to avoid responsibility upon a claimed ambiguity. Any such claim should be resolved against her. Furthermore, since it does not appear that she made any objection concerning the document during the period of approximately four years after she delivered it to Mr. Crestetto and prior to his death, and since it is to be presumed that he relied upon or acquiesced in her declarations therein (Code Civ. Proc., § 1963, subd. 27), she

should not be permitted after his death, in litigating her claim against his estate, to falsify her declarations in the document. Under section 1962 of the Code of Civil Procedure, wherein conclusive presumptions are specified, it is provided in subdivision 3 thereof: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." The holographic will, with its English translation, was introduced in evidence and imposed upon Crestetto's four brothers the obligation to pay to his two sisters the sum of $1,000 each. It further provided that "I desire that in the same way that the sisters are paid, that likewise be paid $500 five hundred dollars to my landlady, Caterina Sappa (Catherine Sappa) as a recompense for the many years I lived in her house as a boarder." ▮ Whatever may have been the reason for preparing the document signed by both parties it constituted an acquittance of any liability on the part of Crestetto for "house rent, etc." as of the date Mrs. Sappa signed it. (See Civ. Code, §§ 1523, 1541.) If any question arises as to what is meant by "house rent, etc." the answer is furnished by reference to the first item of the bill of particulars, reading as follows: "For personal care, attention, contentment, comfort, entertainment, affection, nursing, ailment [aliment], lodging and companionship, from September 20, 1922 to December 10, 1943." Whether the language, "I am not expecting any other compensation from G. Crestetto" bars Mrs. Sappa from collecting from January, 1940 to December 10, 1943, which was three days before the death of Mr. Crestetto, is a question to be decided upon a new trial if one is had.

It is unnecessary, in view of our decision upon the points discussed, to consider other objections raised by appellant.

The judgment is reversed. The purported appeal from the order denying defendant's motion for a new trial is dismissed.

Wood, J., concurred.

SHINN, J.—I dissent. A point of disagreement with my associates is in the answer to the following question:

Where a creditor, without receiving any sum in payment, signed an ambiguous receipt of full payment under an ac-

knowledged liability to pay for services, which receipt did not purport to be a release, and the jury impliedly found upon sufficient evidence that a waiver of the creditor's claim was not intended, should this court, upon appeal, from a consideration of the writing alone, construe it as a release and reverse the judgment to the extent of the amount which was owing to the creditor on the date of the receipt. The opinion of my associates answers this question in the affirmative. I think that is the wrong answer.

In my opinion no sufficient reason has been shown for disturbing the verdict. It is based upon the following implied findings: 1. That for a period of 21 years there existed an understanding between Mrs. Sappa and Crestetto (a) that the latter would pay Mrs. Sappa in the neighborhood of $28 per month for his room and board and the care, attention and services which she rendered from day to day; (b) that the services were worth more than Crestetto was paying, but that the understanding did not include an agreement as to what they were worth; (c) that some undetermined amount would be paid upon Crestetto's death or in the event of his leaving the home during his lifetime. 2. That all of Mrs. Sappa's services were rendered in conformity with the understanding. 3. That the services were worth $5,000 more than the total of the sums paid by Crestetto. 4. That in the execution of the writings denominated "receipt," dated January, 1940, it was not the intention of Mrs. Sappa and Crestetto to make a new agreement superseding the oral agreement, which had been in force for 18 years, and that it was not their intention to fix the sum of $28 or $30 as the full value of the services which had been rendered in the past or which might be rendered in the future.

It is conceded in the opinion of my associates that implied findings 1 and 2 are supported by the evidence, and no question is raised as to the sufficiency of the evidence to support the implied finding No. 3. But from a reading of the receipt the conclusion is reached that Mrs. Sappa thereby released and relinquished all claim to additional compensation for the accommodations and services which she had rendered to Crestetto in the past. It is said that the writing was evidence of a settlement between the parties which barred recovery for the period preceding January, 1940. Section 1523 of the Civil Code, which is cited, reads: "Acceptance, by the cred-

itor, of the consideration of accord extinguishes the obligation, and is called satisfaction.'' The writing clearly does not evidence an accord and satisfaction. Section 1541, Civil Code, also cited, reads: ''An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration.'' The writing did not purport to be a release. The code section applies only to formal and express releases given with intent to extinguish the obligation. (*Upper San Joaquin Irr. Canal Co.* v. *Roach*, 78 Cal. 552 [21 P. 304]; *Rogers* v. *Kimball*, 121 Cal. 247 [53 P. 648].)

In the broad interpretation given the writing in the main opinion it could have amounted to no more than a declaration by Mrs. Sappa that the amounts which she had received constituted payment in full for the services rendered. It was said in *Brannan* v. *Mesick*, 10 Cal. 95, 108: ''A receipt is not regarded as a contract, and hardly as an instrument at all, and has but little more force than the oral admission of the party receiving.'' It is only prima facie evidence. ''A receipt in its common use is nothing more than a bare acknowledgment of having received something.'' (*Greer* v. *Los Angeles Athletic Club*, 84 Cal.App. 272, 276 [258 P. 155].) Viewed as a receipt, the writing was subject to explanation and open to proof that its recitals were untrue. All the evidence as to the understanding between Mrs. Sappa and Crestetto during the preceding 18 years was to be weighed against the alleged admission by Mrs. Sappa that she had been paid in full. It appeared clearly that the amounts that had been paid were wholly inadequate and that the parties had always understood them to be inadequate. After the receipt was given, Crestetto repeated his promises to pay the ''rest'' of what he owed at a future time. The jury gave greater weight to the evidence of the foregoing facts than it did to Mrs. Sappa's equivocal acknowledgment, if it was an acknowledgment, that she had been paid in full. The receipt, when construed most strongly against Mrs. Sappa, being only a written admission, was subject to contradiction; as evidence that she had been paid in full, or that the parties understood she had been paid in full, it was strongly contradicted, and the implied finding that the parties did not intend that the receipt would alter the oral understanding which had existed for many years is conclusive on that point.

The writing has none of the features of a contract. But if it is examined on the theory that it was intended to be a release, the implied findings of the jury are equally conclusive. The circumstances under which the writing was signed, including the situation of the parties and the subject to which it related were to be taken into consideration. (Civ. Code, § 1647; Code of Civ. Proc., §§ 1856, 1860.) The meaning of the writing was doubtful, and extrinsic evidence was admissible to explain the ambiguity. The evidence to which reference has been made, and which is stated more fully in the main opinion, amply supports the implied finding that Mrs. Sappa did not intend to release her claim to further compensation. The debt was a just one, and there was no question as to whether Crestetto would pay more, but only a question as to when it would be paid. He had been chided by the mutual friends of the parties, he had explained his intentions, and Mrs. Sappa had declared that she was satisfied. She said no more than this in the writing. The jury construed her written statement, as it construed her oral statements, to mean that she was satisfied, not with the amounts which she had received, but with the understanding that she had with Crestetto. The words of the receipt, "as today I am fully satisfied and am not expecting any other compensation," being in the present tense, may reasonably be construed as a declaration that Mrs. Sappa was not presently expecting additional compensation. That had been her attitude from the beginning. She continued to render services as she had been doing in the past, and Crestetto continued to repeat his statements that he would pay her more at some future time. The intentions of the parties were to be ascertained and determined by the jury as a question of fact. The implied finding that the writing expressed Mrs. Sappa's satisfaction with the amounts that had been paid, and would be paid, monthly, and did not constitute a release of her right to receive more at a future time is supported by the evidence that she had a just claim, and that Crestetto recognized it, and was not shown to have had any inclination to evade his responsibility. Where the meaning of a writing is doubtful, and a finding as to the intention of the parties has been made from a consideration of the writing and proper and sufficient extrinsic evidence, the decision is one of fact and is binding upon an appellate court. We cannot with propriety ignore or override the implied find-

ings that the parties intended to carry out their oral understanding and that the writing was not intended to express a new agreement.

I do not doubt that we should regard the implied findings as to the intentions of the parties as conclusive, but if I were in doubt upon that point I would still be unable to agree with the construction given the receipt in the main opinion. From a consideration of the receipt and the entire evidence in the case, I would arrive at the same conclusion as that reached by the jury. I would read the receipt as a statement of Mrs. Sappa that she was satisfied to receive a certain amount monthly, in view of Crestetto's intentions to pay more in the event of his death or upon leaving the home during his lifetime. I see no reason whatever why these two friendly and congenial persons should have come to the unreasonable and unfair understanding that Crestetto should pay as little as $28 or $30 a month as the full value of the satisfactory food and shelter, the surroundings of a good home, and the congenial companionship and thoughtful care which Mrs. Sappa had bestowed upon him. Section 1648 of the Civil Code reads as follows: ''However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'' And in *Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474 [19 P.2d 785], the court said (p. 481): ''Whenever it may be determined as a matter of law that the actual mutual intention of the parties may be found within the scope of the language employed by them, the court must interpret the contract so as to give effect to such intention even though the broader and more general terms of the contract may, standing alone, apparently include something as to which it nevertheless appears from the circumstances and from the contract as a whole that the parties did not intend to contract.'' The principle of these rules is especially applicable to an agreement in which no broad terms can be found except by giving a loose construction to vague and ambiguous language. Upon careful study, the wording of the writing in question will be found to be consistent with the oral understanding of the parties. The interpretation which my associates have given to the receipt brings it in direct conflict with the oral understanding which was firmly established by the evidence. Such construction would also make an entirely new contract for the parties and one which I believe finds no support in the evidence. If the receipt was

an acknowledgment that $28 or $30 a month was all Mrs. Sappa's services had been worth in the preceding 18 years, it was an acknowledgment that they would be worth that sum, and no more, in the future. No different services were contemplated. Upon the evidence, Mrs. Sappa was entitled to be paid the reasonable value of her services over the entire 21-year period, or she was entitled to nothing in addition to what she had received.

Inasmuch as I favor an affirmance of the judgment, it is necessary to discuss other points raised by appellant which are not treated in the main opinion.

Appellant argues that there was no evidence of an offer by one of the parties which was accepted by the other, and therefore no proof of an agreement, and he says that there was, at most, only an expression of Crestetto's intention to provide for Mrs. Sappa by will. Crestetto's promises were made in the presence of plaintiff, she acquiesced in them and continued to render the services, there was no agreement as to the exact amount that Crestetto would eventually pay, and upon these facts he became obligated to pay what the services were reasonably worth. (Civ. Code, § 1611.) He left Mrs. Sappa $500 by his will and he named her the beneficiary of $532 worth of war bonds which were turned over to her after his death. It is argued that he never intended to do more, and that he thereby fulfilled his promises and obligations. Perhaps Crestetto thought he could fix his own price upon the services and satisfy his obligation by a $500 bequest or a gift of bonds, and so he could have if Mrs. Sappa had agreed to it, but the implied finding was that she did not agree to such a settlement. If the jury had found that Mrs. Sappa, in executing the receipt of January, 1940, intended to accept the $500 bequest in Crestetto's December, 1937, will in satisfaction of her claims to further compensation, the question would be whether that finding had support in the evidence. I do not say that it would have been an unreasonable conclusion, but the question here is just the reverse, namely, whether the finding that she did not agree to accept the bequest as a full settlement has support in the evidence. In my opinion, it is amply supported for the reasons heretofore stated. The obligation implied by law was to pay the reasonable value of the services. The conclusion that the

bequest and the gift of bonds were gratuities was not unreasonable. The jury found that the services for the entire period were worth approximately $50 per month, or $20 per month more than Mrs. Sappa had received. The bequest, which antedated the receipt, would have added only about $27 per year for the 18-year period. The jury was required to find what Mrs. Sappa's intentions were when she signed the receipt, that is to say, whether she then intended to accept the $500 bequest in satisfaction of her claim. If she did not intend to accept such a settlement, the fact that Crestetto considered the bequest to be sufficient would be immaterial. A valid obligation, of course, can be satisfied by partial performance only by mutual agreement. In determining what Mrs. Sappa's intentions were, the jury no doubt gave considerable weight to the fact that the amount of the bequest was insignificant as compared with the extent of Crestetto's obligation.

A further contention is that the verdict is without support in the pleadings or evidence, for the reason that there was no allegation or proof of the value of the services. No witness gave opinion evidence as to the value of the services but I find the evidence sufficient to enable the jury to determine what the services were reasonably worth. It was emphasized that Mrs. Sappa was a good cook and there was comprehensive evidence of the personal care, attendance, companionship, nursing, and other services which she rendered. There was testimony that she nursed Crestetto through a siege of pneumonia and other lesser illnesses and that she also nursed and cared for him throughout a period of several months after he had been seriously injured in an automobile accident. He had no other nurse upon these occasions and the care and attention which he received from Mrs. Sappa appear to have been adequate and satisfactory. The services were not merely occasional; they were constant throughout the entire period and were under the observation of mutual friends, who testified as witnesses for Mrs. Sappa. One cannot read the transcript without being impressed with the fact that Crestetto, who was the only one who boarded or roomed with Mrs. Sappa, enjoyed to a large extent the conveniences and advantages of a congenial and well-ordered home life. The small daily attentions which he received were not without value; they had a real and substantial value.

The evidence was sufficient to give the jury an insight into the home which Mrs. Sappa made for him. She testified upon some phases of the case and the jurors had an opportunity to observe her appearance and demeanor and to form opinions as to her character and capabilities. The determination which the jurors had to make required a consideration of the entire evidence. The security, the comfort, and the peace of mind which Crestetto found in the constant attentions of Mrs. Sappa, and her interest in his welfare, were peculiar to her own home. Others could have nursed him, attended to his banking, helped keep his several houses in order and done his errands, and it may be conceded that if Mrs. Sappa had kept an account of the time which she devoted to such activities, which any competent person could have performed, opinion evidence as to the value could properly have been received. But the other factors which we have mentioned were to be weighed in the light of common experience and were to be appraised, not in accordance with any fixed standard of value, but in the exercise of the judgment of each individual juror, in the light of his own experience and observation, as to the advantages of having a home life such as Crestetto enjoyed. It was not a case which called for the testimony of expert witnesses. *Lundberg* v. *Katz,* 44 Cal. App.2d 38 [111 P.2d 917], is in point. The plaintiff there recovered $5,200 against the estate of a decedent for services rendered as housekeeper and nurse for a period of some 16 years. The court found the value of the services to be $15,600 and that the estate was entitled to a credit of $10,400 on account of supplies, etc., paid by the decedent. It was urged there, as it is here, that the finding as to the value of the services was not supported by any evidence of value. There was, however, evidence of daily care of the decedent similar to that furnished Crestetto by Mrs. Sappa, and it was held that this evidence was sufficient to support the finding, the court saying (p. 46): "In matters of continuous domestic service, opinion evidence if given need not be followed if the trier of facts is convinced that the opinion expressed is not sound. As a rule the facts do not call for the testimony of an expert. If the trier of the facts possesses the common knowledge of the value of such services, their reasonable value may be determined without the aid of opinion testimony. (*Seib* v.

*Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281]; *Nylund* v. *Madsen,* 94 Cal.App. 441 [271 P. 374]; *Birkhofer* v. *Krumm,* 27 Cal.App.2d 513 [81 P.2d 609]; *John H. Spohn Co.* v. *Bender,* 18 Cal.App.2d 447 [64 P.2d 152].)'' The jurors must be presumed to have had such knowledge.

As already stated, the complaint contained no allegation as to the reasonable value of the services. While it is ordinarily necessary, in an action to recover for services rendered, to allege in the complaint the value which plaintiff places upon them, the complaint in the present action, which set forth fully the nature and the duration of the services, and alleged the agreement of Crestetto to pay for them, was not fatally defective in failing to allege their reasonable value. The prayer of the complaint placed a value upon them and defendant was fully advised as to what the issue was, since it was not alleged that the amount to be paid had been agreed upon. Where the services are fully described in the complaint and their value may be determined from evidence as to the nature and duration of them, and where the prayer of the complaint states the amount which the plaintiff seeks to recover, the issue is tendered and a specific allegation of value of the services is unnecessary.

The verdict was not, as a matter of law, excessive. The sums which plaintiff had been paid on account over the 21-year period were quite small. The additional $5,000 would bring plaintiff's total compensation to slightly over $50 per month for the entire period. That was not too much for Mrs. Sappa to ask for what she gave.

The reversal, as directed in the main opinion, leaves undecided an important question which will arise again upon a retrial, namely, whether the court should receive the testimony of Mrs. Sappa as to the circumstances under which the receipt was given. She admitted having signed the writing but contended that the executor, by placing in evidence what he claimed to be a receipt of payment, waived the bar of section 1880, subdivision 3, of the Code of Civil Procedure, and that she should have been allowed to testify concerning it. The ruling of the court was against her and the testimony was excluded. I question the correctness of this ruling. As previously mentioned, the writing was at most an admission on the part of Mrs. Sappa and it was ambiguous. Her testimony as to the circumstances under which the writing was

signed was admissible unless it was barred by the section; it was barred unless the executor, by placing the writing in evidence, waived the bar. Whether a waiver took place is an open question in this state. Authority elsewhere is meager and conflicting, but I think the better reasoning supports the theory of waiver. (*In re Enyart's Estate*, 100 Neb. 337 [160 N.W. 120, 123-4] ; *In re Peterson's Estate*, 104 Neb. 574 [178 N.W. 187] ; *In re Frothingham's Will*, 161 Misc. 317 [291 N.Y.S. 656].) If an executor introduces testimony as to oral admissions of a claimant, it would seem that he opens the door for the claimant to testify fully as to his statements, of which the alleged admissions may have constituted only a part, or, if the executor places in evidence portions of a writing which are claimed to be admissions, he opens the door for the claimant to introduce the remainder of the writing. And in principle it would seem that a qualified waiver takes place where the executor places in evidence, and seeks the benefit of, an ambiguous writing.

If a retrial is limited to a determination of plaintiff's right to recover for services subsequent to the date of the receipt, it will no doubt be the contention of the defendant that the receipt evidenced an agreement of the parties as to the value of plaintiff's services, and upon that issue the question will arise whether Mrs. Sappa's testimony would be admissible. If we fail to answer this question, we are inviting another appeal, whichever way the trial court may rule upon it.

In my opinion, the judgment should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied May 1, 1947. Gibson, C. J., Carter, J., and Schauer, J., voted for a hearing.