[Civ. No. 1597.   First Appellate District.—June 15, 1915.]

## LOUIS S. BEEDY, Appellant, v. SAN MATEO HOTEL COMPANY (a Corporation), Respondent.

NEW TRIAL—GENERAL ORDER—RULE ON APPEAL.—An order granting a new trial which is general in its terms must be sustained if it can be fairly said that the motion therefor is well grounded upon all or any of the statutory grounds upon which the motion is based.

ID.—CORPORATION LAW—SUBSCRIPTION FOR STOCK—SIGNING OF SUPPLEMENTARY AGREEMENT—REFERENCE TO ORIGINAL AGREEMENT—EFFECT UPON MANNER OF COLLECTION.—A subscriber for corporate

stock who signs a subscription agreement which is supplementary to the original subscription agreement and which makes no provision therein as to the manner or at what times the amounts subscribed shall be paid is bound by the terms of the original agreement which provides that the subscriptions shall be payable upon calls made by the board of directors upon such notice as the corporation by-laws provide, notwithstanding that such subscriber did not sign the original agreement and that the same was not attached or annexed to the supplemental agreement, as recited therein, where the supplemental agreement shows upon its face by reference that it was executed and intended as a supplement to the original agreement; and in an action to recover such subscription the subscriber cannot contend that the same is only collectible by assessment levied in accordance with the provisions of the Civil Code governing such matter.

ID.—CONTRACTS—REFERENCE—MERGER.—A written agreement may by reference expressly made thereto, incorporate other written agreements; and when such reference is made the original agreement and those referred to must be considered and construed as a whole. Actual annexation is not essential to a merger by reference of separately executed written instruments.

APPEAL from an order of the Superior Court of San Mateo County granting a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

William Thomas, and James Lanagan, for Appellant.

Ross & Ross, for Respondent.

LENNON, P. J.—In this action the plaintiff sought to recover a judgment against the defendant in the sum of two thousand dollars. The plaintiff's complaint pleaded a cause of action for moneys had and received; and the defendant, answering, denied that it was indebted to the plaintiff in any manner for any sum; and cross-complaining, prayed for judgment against the plaintiff upon allegations of fact to the effect that, in the fall of 1906 the plaintiff and numerous other persons agreed in writing to form a corporation under the laws of the state of California, for the purpose of acquiring a site for a hotel in the county of San Mateo, and thereafter constructing a hotel building thereon and conducting the hotel business thereat, that the capital stock of said corporation should be three hundred thousand dollars,

divided into three thousand shares of the par value of one hundred dollars each; that ten per cent of the par value was payable without demand, and the balance on calls by the board of directors; that plaintiff subscribed for fifty shares of the stock of said contemplated corporation; that on the fifth day of November, 1906, defendant was duly incorporated; that on the eleventh day of November, 1906, a code of by-laws was duly adopted by the defendant, one of which by-laws provided for making calls, in accordance with the subscription agreement; that thereafter and on the twenty-second day of November, 1906, a certificate for fifty shares of the capital stock of said corporation was duly issued by said defendant and delivered to plaintiff; that pursuant to the by-laws of said corporation the defendant made ten calls for payments of installments of said subscriptions, each for ten per cent of the par value of said stock; that the plaintiff paid all of said calls numbers 1 to 7 inclusive, and one hundred dollars on account of call No. 8, leaving a balance of four hundred dollars due thereon, and also failed and neglected to pay any part of calls numbers 9 and 10; that there was due and unpaid from the plaintiff to the defendant for unpaid calls the sum of one thousand four hundred dollars, for which the defendant prayed judgment.

In addition to denying the material alllegations of the defendant's cross-complaint, the plaintiff as a special defense alleged that on or about August 27, 1906, numerous persons, whose names are unknown to him, entered into the following agreement:

"We, the undersigned, agree to form a corporation under the laws of the state of California for the purpose of purchasing or otherwise acquiring a site for a hotel in the county of San Mateo, state of California, and when so acquired to improve whatever buildings may then be upon said premises, or to construct new and additional ones thereon, and to conduct the hotel business therein;

"The capital stock of said corporation to be $300,000, divided into 3,000 shares of the par value of $100 each. As soon as the corporation is formed we and each of us agree to pay to the secretary of said corporation at his office in the city of San Mateo aforesaid, without demand, ten per cent of the par value of the shares of stock subscribed by us respectively as hereunto set forth, and to pay the balance when

called upon until the full amount of said stock is paid, but all other calls on said subscription shall be made by the board of directors of said corporation with such notice as the corporations' by-laws shall provide. Total capitalization to be subscribed before any calls are made for payment.''

The plaintiff's answer to the defendant's cross-complaint further averred that after the execution of the foregoing agreement and prior to November 5, 1906, the plaintiff and numerous other persons whose names were unknown to the defendant, entered into the following agreement:

''We the undersigned do hereby subscribe for the number of shares set opposite our respective names to the hotel project mentioned in the annexed 'List of subscribers to capital stock of the San Mateo Hotel project,' but expressly subject to the condition that the undersigned James H. Doolittle shall be employed by the hotel corporation as superintendent and manager for the term of five (5) years from the date the hotel is incorporated, upon such terms and conditions as may be agreed upon between said Doolittle and the board of directors of such corporation. If such employment is not made then the following subscriptions and each thereof to be void.''

The plaintiff, further answering the defendant's cross-complaint, alleged that at the time he signed his name to the last-mentioned agreement it was not attached or annexed to any other paper whatever; but that, as plaintiff is informed and believes, said last-mentioned agreement was thereafter annexed to the agreement herein first quoted and alleged to have been executed on or about August 27, 1906.

On the issues thus raised the trial court made its findings of fact in favor of the plaintiff, and accordingly rendered and entered judgment in his favor for the sum of two thousand dollars. Subsequently, however, the trial court ordered a new trial upon the defendant's motion, and it is from this order that the plaintiff has appealed.

The facts of the case, as shown by an agreed statement of facts and as developed practically without dispute by the evidence adduced upon the trial, are substantially these: Plaintiff and a number of other persons subscribed for shares of stock in a corporation to be formed for the purpose of acquiring a hotel site and operating a hotel in San Mateo. Plaintiff subscribed for fifty shares of the par value of one

hundred dollars each. The corporation was thereafter organized, and the board of directors made a series of ten calls of ten per cent each by way of resolution. No assessments were levied in accordance with the provisions of section 331 of the Civil Code. Plaintiff paid on these calls the sum of three thousand six hundred dollars, but failed to pay four hundred dollars on call No. 8 and also failed to pay calls Nos. 9 and 10; in other words, he paid in three thousand six hundred dollars on his subscription and failed to pay one thousand four hundred dollars. Of the other subscribers some did not pay the amount of calls Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10; some paid in only fifty dollars per share on the shares subscribed for by them; some paid only twenty-five dollars, and some paid only ten dollars. The defendant corporation never took any legal proceedings to collect from the delinquent subscribers or any of them the difference between the amounts paid by them upon their subscriptions for the, stock and the par value of the shares of stock subscribed for by them. On or about the 17th of November, 1907, defendant levied an assessment of ten per cent (No. 1), and in doing so purported to comply with section No. 331 et seq. of the Civil Code. The plaintiff paid the full amount of this assessment, to wit, the sum of five hundred dollars. Some of the stockholders did not pay this assessment. On the seventeenth day of March, the sixteenth day of June and the first day of August, 1908, the defendant levied assessments numbers 2, 3, and 4, each a similar assessment to No. 1. Plaintiff paid them all. In each case the plaintiff received a notice in the usual form from the corporation, reciting the fact of the assessment, and notifying him that upon a certain date his shares of stock would be sold unless he paid the assessment. Of the other subscribers some paid assessments numbers 2, 3, and 4, and others did not. The plaintiff testified that at the time he paid the assessments he did not know that many of the subscribers had paid very much less than he had paid upon his subscription. On the tenth day of December, 1908, the board of directors of the defendant passed the following resolution:

"Resolved, that each stockholder who has paid in excess of $100 (one hundred dollars) per share for the stock held by him in this corporation shall have issued to him from the treasury stock and unissued stock of this corporation one

share for each $100 money so paid by him to said corporation in excess of the par value of one hundred ($100) dollars on each share (rights to the fractional shares to be adjusted between stockholders or by (upon) payment of an additional amount required to obtain a full share in cash).

"Further Resolved, that all shares, on which calls have not been paid are hereby declared forfeited, and full shares shall be issued and offered, without prejudice to the rights of this corporation, to the defaulting subscribers for the amount of money actually paid in by them at the rate of one hundred ($100) dollars for each share.

"Further Resolved, that irrespective of any uncertainty or ambiguity in the language of this resolution, it is the intent and purpose of the board of directors that all stockholders shall stand on an equality of payment, and that each stockholder shall have one share for each one hundred ($100) dollars paid by him into the treasury of the corporation.

"Further Resolved, that all of assessments Nos. 1, 2, 3, and 4, and all of the proceedings taken thereunder, are hereby rescinded and canceled and declared of no further force or effect.

"Further Resolved, that the president and secretary be and they are herewith authorized and directed to issue the necessary stock, and to take such other action as may be necessary to carry the foregoing resolutions into effect."

This resolution was subsequently ratified at a meeting of the stockholders of the corporation defendant. Plaintiff, however, was not present at the meeting either in person or by proxy, and never consented to the passage and ratification of the resolution. The fact that the purpose of the resolution was effected in so far as a large majority of the stockholders was concerned, was admitted in evidence subject to the objection of the defendant that it was irrelevant and immaterial.

Pursuant to the resolution the defendant issued and tendered to the plaintiff a certificate for six shares of its stock, which were intended to cover the six hundred dollars that the plaintiff had already paid to the defendant over and above the par value of the fifty shares subscribed for by him. This certificate plaintiff refused to accept, and subsequently demanded from the defendant the return of the two thousand dollars paid by him on assessments Nos. 1; 2,

3, and 4. Among other things it was the contention of the plaintiff in the court below that in the absence of an express agreement to pay upon demand and at stated times the amount of his subscription to the corporate capital stock of the defendant, such subscription could only be collected by assessments levied in accordance with the provisions of section 331 et seq. of the Civil Code.

The order granting a new trial was general in its terms, and therefore must be sustained if it can be fairly said that the defendant's motion for a new trial was well grounded upon all or any of the statutory grounds upon which a motion for a new trial may be based. The defendant's motion for a new trial was grounded in part upon alleged errors of law occurring at the trial, and the alleged insufficiency of the evidence to justify the decision of the court. With reference to the last mentioned ground of the motion it was specified, among other things, that the evidence was insufficient to justify and support that portion of finding number one which declares ''That plaintiff had never signed the original subscription agreement, and was not aware of its provisions until after the commencement of the action.'' The evidence was further specified to be insufficient to justify and support the declaration of finding number 2, which in part was to the effect that James H. Doolittle, who presented to plaintiff for signing the supplemental subscription agreement, never saw the origninal subscription agreement, and never knew of its provisions otherwise than that in a general way it was a subscription agreement to form a corporation for the purpose of erecting and conducting a hotel at the city of San Mateo.

It was an admitted fact in the case that there were only two subscription agreements—the original and supplemental; and that they were those hereinbefore quoted as having been pleaded in plaintiff's answer to the defendant's cross-complaint. Upon that phase of the case Mr. Doolittle, the general manager and one of the directors of the defendant, after identifying the first subscription agreement as being the ''original,'' and declaring that he drafted the second subscription agreement, testified as follows:

''Q. Do you know what the reference in the second agreement 'list of subscribers to capital stock in San Mateo Hotel project' referred to? A. Yes, sir.

"Q. Did you bring to the attention of Mr. Beedy, the plaintiff in this case, at the time he subscribed to the second agreement set forth here the reference contained therein? A. I explained to him the whole project.

"Q. The reference quoted in the second agreement as follows: 'List of subscribers to capital stock in San Mateo Hotel project'? A. Certainly, I explained the whole thing to him.

"Q. Mr. Beedy was with you at the time this second agreement was signed. Did you call to Mr. Beedy's attention the agreement that was referred to here under the words, 'List of subscribers to capital stock in the San Mateo Hotel project'? A. Yes, sir."

On cross-examination this witness testified as follows:

"Q. You testified at the time you presented the subscription agreement in paragraph 2 of the agreed statement of facts you called Mr. Beedy's attention to the list of subscribers to the second agreement? A. I explained all the conditions, the hotel company's organization, and showed him this agreement, and explained to him everything I could about it.

"Q. What agreement? A. The second agreement, the one I had. I never had the first agreement.

"Q. You explained it all to him? A. The whole matter. I explained the propositions we had in view; the organization of the hotel company here; talked about the different parties that were taking stock in the property, and explained to him the agreement that I was having him sign was provisional on the fact that I should run the hotel. I cannot tell exactly the conversation. It was several years ago."

The plaintiff, upon cross-examination as a witness in his own behalf, testified with reference to his knowledge of the existence of the original subscription list in part as follows:

"Q. You did know that there was a list of subscribers to the San Mateo Hotel project? A. Mr. Doolittle said there was a subscription list, yes, sir."

In addition to the quoted testimony the fact should be noted, in determining the sufficiency of the evidence to support the questioned findings, that the two subscription agreements were in legal effect but one instrument. This is so because of the rule that a written agreement may by reference expressly made thereto, incorporate other written agree-

ments; and when such reference is made the original agreement and those referred to must be considered and construed as a whole.  While the two subscription agreements in the present case were not executed at the same time, and although only the second agreement was signed by the plaintiff, nevertheless the second agreement showed upon its face that it was executed and intended as a subscription for a specified number of shares of stock in the "hotel project mentioned in the annexed 'List of subscribers to the capital stock in the San Mateo Hotel project,' . . ."  The fact that the list referred to was not actually annexed to and did not accompany the second subscription agreement at the time it was presented to the plaintiff for signing, did not operate to destroy the legal unity of the two agreements.  Actual annexation is not essential to a merger by reference of separately executed written instruments (*Haughawout* v. *Raymond*, 148 Cal. 311, [83 Pac. 53]); and we are of the opinion that it can be fairly said from the annexing clause of the second subscription agreement that either constructive or actual annexation was contemplated by the parties.  That this is so is evidenced, we think, by the fact that the subject-matters of both agreements were not only the same in substance, but were intimately connected in intention by a specific reference, which upon its face shows that although separately executed the second subscription agreement was intended to be supplementary of the first.  Consequently the second subscription agreement, when it was presented to and signed by the plaintiff, carried constructive notice to him of the terms and conditions of the first subscription agreement; for "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which by prosecuting such inquiry he might have learned such fact."  (Civ Code sec. 19.)

Conceding that the testimony of the witness Doolittle affords a sufficient support for the finding of the trial court that he never knew save in a general way the terms and conditions of the original subscription agreement, still such finding is comparatively of minor importance and will not alone suffice as a basis for the further and controlling finding upon the issues raised by the cross-complaint, that

the plaintiff never knew the provisions of the original sub-
scription agreement at the time he signed the supplementary
agreement; and undoubtedly the testimony of Doolittle,
coupled with that of the plaintiff and the fact of the legal
unity of both agreements, would have supported, if it did
not absolutely compel, a finding that the plaintiff had either
actual or constructive notice of the provisions of the origi-
nal subscription agreement, and consequently was bound
thereby, when he signed the supplementary subscription
agreement. Such a finding, had it been made, would necess-
arily involve the legal conclusion that, in calling for the
sums due from subscribers to its stock, the defendant would
be controlled by the terms and conditions of the original
and supplemental subscription agreement rather than by
the provisions of section 331 et seq. of the Civil Code.
(*People etc. Bank* v. *Sadler*, 1 Cal. App. 189, [81 Pac. 1029].)
Such a finding would have materially affected the relative
rights and obligations of the plaintiff and defendant, for
the plaintiff, being bound by the provisions of both agree-
ments, and having received notice of all the calls for the
payment of the sums subscribed for by him, he would be
legally liable for the full amount of his subscription, which,
after deducting the sum of four hundred dollars paid on
call number 8, would be the sum of one thousand four hun-
dred dollars. That being so, and assuming the correctness
of the findings and conclusions made upon the main case,
the plaintiff would not have been entitled to a judgment
against the defendant for any sum in excess of six hundred
dollars.

In brief, we are satisfied that the evidence adduced in
response to the issues raised under the cross-complaint would
have sufficiently supported findings and judgment upon that
phase of the case in favor of the defendant to the extent at
least of one thousand four hundred dollars, and that being
so, the trial judge was invested with discretion in the matter
of granting a new trial which cannot be interfered with here.
(*Wendling* v. *Glenwood*, 153 Cal. 411, 416, [95 Pac. 1029].)
The order granting a new trial being, as we have seen, general
in its terms, reopened the entire case, and properly so, be-
cause the issues involved upon the entire case were so inti-
mately interwoven as to render them practically inseparable,

and therefore incapable of consideration and determination apart from one another.

The order appealed from is affirmed.

Richards, J., and Kerrigan, J., concurred.