[Civ. No. 8646.   First Appellate District, Division Two.—September 30, 1932.]

THE CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES, as Guardian, etc., Respondent, v. ARROWHEAD SPRINGS BEVERAGE COMPANY (a Corporation), Appellant.

552

Rollin L. McNitt, Bertin A. Weyl and Edythe Jacobs for Appellant.

Janeway, Beach & Hankey and S. T. Hankey for Respondent.

GRAY, J., *pro tem.*—Annie W. Stimson having been declared incompetent, pending this appeal, the guardian of her estate has been substituted in her stead. For the sake of clarity, she will continue to be called the respondent.

Respondent recovered judgment for the return of her paid subscription for appellant's stock upon the theory that the subscription agreement was void because it included the

sale of 700 shares of common stock, which, under the permit of the corporation commissioner, was not to be sold but was to be issued in escrow for the promoter of appellant, as well as 3,040 shares of preferred stock, which such permit authorized appellant to sell. Appellant disputes the evidence's support of the finding that the sale included such common stock in addition to such preferred stock. Respondent signed a subscription agreement in the following form: "I hereby subscribe for and agree to purchase 3040 shares of . . . Preferred stock of" appellant "and agree to pay therefor $10.00 per share . . . in cash with this subscription . . . " At the same time, appellant's agent signed and delivered a writing, prepared by himself and reading as follows: "Received of Annie W. Stimson . . . check for the sum of Thirty Thousand Four Hundred Dollars on account of his (sic) subscription for 3040 shares of . . . Preferred shares of said Company on the terms set forth in his (sic) subscription contract . . . " Underneath his signature, the agent wrote "and seven hundred shares of Common". Also, at the same time, the agent signed and delivered the following instrument, prepared by respondent's secretary: "Received of Annie W. Stimson . . . 152 shares of . . . the Anaheim Sugar Co. . . . for which I agree to deliver to her 3040 shares of the preferred stock and 700 shares of the common stock of the" appellant "or I agree to return the sugar stock received". It is undisputed that the agent received the sugar stock and not the check and that he sold this stock for cash several days later as previously arranged by the parties. No question arises as to the agent's authority.

In support of the finding, respondent, invoking the rule of construction declared in section 1642 of the Civil Code, that "several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction are to be taken together", contends that the true agreement is not evidenced solely by the agreement signed by respondent but its terms are to be ascertained by consideration of all three documents. (*Torrey* v. *Shea*, 29 Cal. App. 313 [155 Pac. 820].) In reply, appellant argues that, since the last two documents are receipts and not contracts, the above rule is not applicable and that, therefore, the agreement is evidenced solely by the first writing.

Since the second document is but a bare acknowledgment that the agent received a check it is a mere receipt. (*Greer* v. *Los Angeles Athletic Club,* 84 Cal. App. 272, 276 [258 Pac. 155].) The third document is both a receipt and a contract because, in addition to acknowledging receipt of the stock, the agent agrees to deliver specified stock therefor or to return the stock so received. (*Lawrence* v. *Premier Indem. Assur. Co.,* 180 Cal. 688 [182 Pac. 431].) Although the code in stating the rule uses the word "contract" generally the rule as stated uses the word "instrument" in lieu thereof. (13 C. J. 528; 6 R. C. L. 850.) In *Flinn & Treacy* v. *Mowry,* 131 Cal. 481 [63 Pac. 724, 1006], in construing a receipt and contract together, it was assumed that a receipt was within the terms of the code section. In that the last two instruments are identical for present purposes, the same result is obtained even if the first of these is ignored. ▋ Appellant's further objection that the words after the signature in the second writing formed no part thereof, is untenable because parol evidence was admissible to show such addition was intended to form part of the receipt. (*Verzan* v. *McGregor,* 23 Cal. 339.)

▋ Citing *Merkeley* v. *Fisk,* 179 Cal. 748, 754 [178 Pac. 945, 948], to the effect that several contracts can be construed together "only when upon their face they deal with the same subject matter and are by reference to one another so connected that they may be fairly said to be interdependent", appellant argues that, as the first agreement signed by respondent is complete, its terms cannot be enlarged by construing therewith the two other writings. But the first receipt signed by the agent does refer to the contract signed by respondent and, therefore, it is not vulnerable to this objection. The cited case, following *Torrey* v. *Shea, supra,* also recognizes that this rule yields to the rule that "a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates," and that, therefore, oral testimony of the surrounding circumstances is admissible for the purpose of ascertaining the intention of the parties concerning the scope and effect of the several instruments. The fact that the last two instruments by increasing appellant's obligation to that extent modify the agreement signed by respondent does not prohibit their consideration in ascertaining the terms of the

real contract. (*Cobb* v. *Doggett*, 142 Cal. 142 [75 Pac. 785]; *McAuliff* v. *McFadden*, 42 Cal. App. 505 [183 Pac. 870]; *Spotten* v. *Dyer*, 42 Cal. App. 585 [184 Pac. 23]; *Kelly* v. *Great Western Acc. Ins. Co.*, 46 Cal. App. 747 [189 Pac. 785].)

The testimony of respondent and the agent disclosed that, when several days before the execution of the documents he solicited her subscription for preferred stock, she demanded common stock, as an incentive therefor; that he told her, according to his version, that Charles G. Anthony, the president and promoter of appellant, owned it, and, according to her version, that the common stock was owned by the promoters; that he would have to obtain Anthony's approval before he could give her such common stock; and that several days after, he returned and the documents were executed. The reverse of the subscription agreement fully set forth the permit, from which it clearly appears that all common stock was issued in escrow to Anthony, who could only sell it upon further permission of the corporation commissioner. In view of the finding that such permit was exhibited to her and the statement in the subscription agreement that such permit was so exhibited and that she had read the same, it must be taken as true that she knew that Anthony owned the common stock. (*Gridley* v. *Tilson*, 202 Cal. 748 [262 Pac. 322].) However, she had already been told either, according to her version, that the promoters owned such stock, or, according to the agent's version, that Anthony owned it and that Anthony's approval was necessary to her obtaining it. When the agent returned and, without telling her what Anthony had said as to such approval, executed the last two instruments, purporting to sell the common stock as well as the preferred, the respondent might reasonably have inferred from such documents that she was dealing with the company in subscribing for the common as well as the preferred stock. She had been dealing with the agent, as representative of appellant, and had no reason to believe, when he signed the documents, that he was acting in a dual capacity—that is, as appellant's agent as to the preferred stock and Anthony's agent as to the common stock. Indeed, it was more reasonable for her to assume that, as the company was receiving her money, it was selling her the additional common stock

than that Anthony was giving her stock without any consideration to himself. If the sale was to be other than by appellant, as apparently his writings disclosed, it was the agent's duty to have so informed respondent and his negligence in that regard is chargeable to appellant.

Subsequently, on the same day, the agent delivered to respondent two letters. In the first, appellant, by Anthony as its president, acknowledged the subscription for the preferred stock in the form signed by respondent. In the second, Anthony, personally, informed respondent that he was owner of the common stock, that it was escrowed and could only be transferred upon application to the corporation commissioner and that he guaranteed that he would so apply. Appellant argues that these letters should be considered with the first three documents in arriving at the real agreement of the parties. They cannot be so considered because, prior thereto, the transaction had consummated in a contract. Neither can they be considered, in interpreting the contract, as evidence of the construction that the parties had placed upon its terms because one was written by an outsider and the other was written by only one party thereto. (*P. Pastene & Co.* v. *Greco Canning Co.*, 268 Fed. 168.) Furthermore, each is a self-serving declaration in favor of and not against the writer. Appellant also argues that the letters evidence a substitution of Anthony for appellant as debtor for the common stock. "To accomplish a novation by the substitution of a new debtor the substitution must be with the consent of the creditor and the parties must intend that the obligation of the original debtor be released." (20 Cal. Jur. 250.) The record is silent as to such consent or intent on the part of respondent.

The objection that the evidence does not support the finding that the sale and delivery of the common stock was a material consideration for the contract is answered by appellant's stipulation that respondent would testify that she would not have signed the subscription agreement if she had known she was not to receive the common stock mentioned in the other two documents.

Notice of rescission was served eight and one-half months after the date of the contract. In the meantime she made numerous futile attempts to obtain the common stock from Anthony. She also attended the annual stockholders'

meeting. These facts, appellant claims, prove laches, debarring her from relief. ▪▪▪▪ Appellant further contends that relief should be denied because the parties, in contracting for the sale of the common stock in violation of the permit, were equally guilty. Neither of these contentions is well taken. (*First Nat. Bank* v. *Thompson,* 212 Cal. 388 [298 Pac. 808].)

▪▪▪▪ The courts sustained objections to questions asked of the agent which were designed to show that he had told her that Anthony owned the common stock. Appellant claims that these rulings were erroneous. Conceding that they were, the error is without prejudice, because, as above pointed the permit, printed on the reverse of the subscription agreement, stated that Anthony was the owner of the common stock, and the court found, as the agreement stated, that such permit had been exhibited to her. It is obvious, therefore, that the court, in deciding the case, considered that she knew the fact as to the ownership and therefore the excluded evidence would have been only additional evidence as to matter already proven.

Judgment affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 29, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1932.