[Civ. No. 6065. Fourth Dist. May 26, 1960.]

HATTIE HARM et al., Respondents, v. ISABELLE F. FRASHER et al., Appellants.

Leslie C. Gillen, John R. Golden, C. J. Goodell, James T. Barstow, Savage & Shepard and Richard L. Shepard, for Appellants.

Dubsick & Helon and Marvin E. Helon as Amici Curiae on behalf of Appellants.

Thomas F. Lopez and Floyd H. Hyde for Respondents.

COUGHLIN, J.—This is an appeal from a judgment in an action arising out of a sale of the controlling interests in a trucking business.

In 1951, Valley Motor Lines, Inc., and Valley Express Company, each of which was a corporation, together with the

plaintiff Hattie Harm and the Estate of Harold B. Frasher, deceased, acting through duly appointed executors, as co-partners doing business under the firm name of Terminal Warehouse, were engaged in an integrated trucking business. The plaintiff Hattie Harm, individually and as trustee of the George Robert Harm Trust, hereinafter referred to as the "Harm Interests," owned 293 shares of stock of Valley Motor Lines Inc., and 982.5 shares of stock of Valley Express Company. The estate of Harold B. Frasher, hereinafter referred to as the "Frasher Estate," owned 524.08 shares of stock of Valley Motor Lines, Inc., and 1658.50 shares of stock of Valley Express Company. The latter company owned 495.34 shares of stock of the former company.

Prior to July 5, 1951, representatives of the "Harm Interests" and of the "Frasher Estate," as prospective sellers, met with representatives of Consolidated Copperstate Lines, a corporation, hereinafter referred to as "Copperstate," as a prospective buyer, respecting a sale of the corporate shares of the aforesaid corporations and the copartnership business known as "Terminal Warehouse." The prospective sellers quoted a sale price of $1,000,000 for the total trucking operation, but explained that they did not own 14.7 per cent of the shares of Valley Motor Lines, Inc., and offered to sell only the shares which they owned, together with the partnership business, for the sum of $919,012.80. This offer was accepted and three instruments, each entitled "Agreement" and each dated July 5, 1951, were simultaneously executed. One "Agreement," on its face, purported to be between "Copperstate" as "Buyer" and the "Frasher Estate" as "Seller"; the second "Agreement," on its face, purported to be between "Copperstate" as "Buyer" and the "Harm Interests" as "Seller"; and each provided for the sale of the Seller's shares of stock to the Buyer. The third "Agreement" purported to be between "Copperstate" as "Buyer" and the "Frasher Estate" and Hattie Harm as "Seller," and provided for the sale of the partnership business. Each of the three agreements, by way of recital, set forth the stock and partnership ownership of each of the parties named in all of the agreements, and referred to the fact that "Copperstate" wished to acquire all of the shares of stock described and all of the business of the copartnership. Also by way of recital, each of the two stock sales agreements referred to the other and to the partnership sale agreement. The partnership sale agreement, in turn, referred to the two stock sale agreements.

Each of the two stock sale agreements contained the following provision: "The transaction provided for herein shall be closed concurrently with the closing of the sales under the aforesaid separate contracts," i.e., the other two contracts referred to in the recital. The partnership sale agreement contained a similar provision, i.e., "The transaction provided for herein shall be closed concurrently with the sale by" the parties named in the stock sales agreement of their stock in the two corporations. Each of the three agreements in substance stated that, as a condition precedent to the obligation of either party to perform thereunder, the sales in the other two agreements "shall be ready for closing at the same time as the transaction provided for herein." The two stock sale agreements also made approval by the Public Utilities Commission, and the Interstate Commerce Commission, conditions precedent to such obligation. The "Frasher Estate" stock sale agreement provided that approval by the probate court should be a condition precedent to the obligations therein contained.

By August 18, 1954, all of such approvals had been obtained. Thereupon "Copperstate" informed all parties thereof; set September 1, 1954, as the closing date; and tendered performance. The executors of the "Frasher Estate" refused to perform. Although the "Harm Interests" indicated their willingness and intention to perform, "Copperstate," pursuant to its agreement, refused to proceed without performance by all parties. Thereupon "Copperstate" brought an action against all of the parties to enforce performance, and a judgment in their favor became final after affirmance by this court. (*Consolidated Copperstate Lines* v. *Frasher*, 141 Cal.App.2d 916 [297 P.2d 692].) In compliance with that judgment the sales were consummated on August 7, 1956.

Under the "Agreements" executed by "Copperstate" and the "Harm Interests," the latter were to be paid, on the closing date, the sum of $51,853.57 plus interest at the rate of 5 per cent per annum on the sum of $285,626.67 for the period commencing April 5, 1952, and ending on the closing date, and were to receive a promissory note, dated as of the closing date, in the sum of $233,773.10, payable in six equal annual installments, the first coming due one year after the closing date, and bearing interest at 5 per cent per annum on the unpaid balance. The "Copperstate" judgment decreed that its liability to pay interest ceased as of the day of tender, i.e., September 1, 1954.

The "Harm Interests" claimed damage resulting from the

delay in performance by the "Frasher Estate" from September 1, 1954, to August 7, 1956, and brought this action to recover that damage claiming, in substance, that the refusal of the "Frasher Estate" to complete the sale on September 1, 1954, constituted not only the breach of an agreement between "Copperstate" and the "Frasher Estate," but also constituted the breach of an agreement between the "Harm Interests" and the "Frasher Estate." By the complaint herein and its amendments, the plaintiffs, i.e., the "Harm Interests," claimed the damage sustained by them amounted to a sum equal to interest at the rate of 7 per cent per annum, for the period from September 1, 1954, to August 7, 1956, on $163,871.95, being the cash tendered to them by "Copperstate" on September 1, 1954, and on the further sum of $233,773.10, being the principal amount of the note tendered to them on said date.

At the time of the transaction in question, the defendants Isabelle F. Frasher, Ernest E. Frasher, Gail H. Crawford and Morris A. Atkins were executors of the Frasher Estate. This action was filed against the first two defendants individually and as executors, and against the last two defendants individually; the last two defendants no longer being executors. The defendant Crawford neither appeared nor was served with summons herein. After a trial, at which the other defendants were represented, the court found that the sales transaction in question was expressed in three separate written contracts, each of which by its own terms, was made dependent upon the others, and concluded that the agreement to sell was one transaction which was expressed in three written contracts, mutually integrated and interdependent. Judgment was entered in favor of the plaintiffs and against all of the defendants, including Crawford, in all capacities named. All defendants, except Crawford, appealed. The defendants contend that the foregoing finding and conclusion of the trial court were erroneous. At their request that court also found that neither of the plaintiffs was "a party or signatory" to the stock sale agreement signed by "Copperstate" and the executors, and that none of the executors was "a party or signatory" to the stock sale agreement signed by "Copperstate" and the "Harm Interests."

The general rule applicable to the issue at bar has been stated in varying ways. In *Burnett* v. *Piercy*, 149 Cal. 178, 189 [86 P. 603], the court said: "Where two or more written *instruments* are executed contemporaneously, with

reference to each other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose intended to be accomplished.'' (Emphasis added.)

This statement has been quoted and followed in *Mayers* v. *Loew's, Inc.*, 35 Cal.2d 822, 827 [221 P.2d 26], and *People* v. *Ganahl Lumber Co.*, 10 Cal.2d 501, 507 [75 P.2d 1067]. With less restrictive elements the rule was expressed in *Symonds* v. *Sherman*, 219 Cal. 249, 253 [26 P.2d 293] as follows: '' 'It is a general rule that several *papers* relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract. (Citing Cases.)' '' (Emphasis added.) (*Cf. Shattuck* v. *Chase*, 86 Cal.App.2d 810, 813 [195 P.2d 475].) The statutory statement of the rule is expressed in section 1642 of the Civil Code which provides: ''Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.''

The term ''contract'' as used in the code section is descriptive only of a writing and, in reality, refers to an ''instrument.'' (*Cadigan* v. *American Trust Co.*, 131 Cal. App.2d 780, 787 [281 P.2d 332] ; *Citizens Nat. Trust & Sav. Bank* v. *Beverage Co.*, 126 Cal.App. 550, 554 [14 P.2d 821].)

The general principle of joint consideration of several instruments as one agreement is applicable whether they expressly refer to each other (*Mayers* v. *Loew's, Inc.*, 35 Cal.2d 822 [221 P.2d 26] ; *Roberts* v. *Security Trust & Sav. Bank*, 196 Cal. 557, 563 [238 P. 673] ; *Trottier* v. *M. H. Golden Construction Co.*, 105 Cal.App.2d 511, 515 [233 P.2d 675] ; *Holbrook* v. *Fazio*, 84 Cal.App.2d 700 [191 P.2d 123] ; *Valley Const. Co.* v. *City of Calistoga*, 72 Cal.App.2d 839, 841 [165 P.2d 521] ; *Bell* v. *Rio Grande Oil Co.*, 23 Cal.App.2d 436, 440 [73 P.2d 662] ; *Beedy* v. *San Mateo Hotel Co.*, 27 Cal.App. 653, 661 [150 P. 810]), or it appears from extrinsic evidence that they were executed as a part of one transaction. (*People* v. *Ganahl Lumber Co.*, 10 Cal.2d 501, 507 [75 P.2d 1067] ; *Tuso* v. *Green*, 194 Cal. 574, 581 [229 P. 327] ; *Merkeley* v. *Fisk*, 179 Cal. 748, 754 [178 P. 945] ; *Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 786 [281 P.2d 332] ; *Storm & Butts* v. *Lipscomb*, 117 Cal.App. 6, 15 [3 P.2d 567] ; *Hancock* v. *Clark*, 56 Cal.App. 277, 279 [204 P. 1098] ; *Torrey* v. *Shea*, 29 Cal.App. 313, 316 [155 P. 820].) The use of extrinsic evidence to lay the foundation for a consideration of several instruments as part of a single transaction does not

involve a violation of the parol evidence rule. (*Merkeley* v. *Fisk*, 179 Cal. 748, 754 [178 P. 945] ; *Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 782 [281 P.2d 332] ; *Citizens Nat. Trust & Sav. Bank* v. *Beverage Co.*, 126 Cal.App. 550, 554 [14 P.2d 821] ; *Torrey* v. *Shea*, 29 Cal.App. 313, 316 [155 P. 820].)

"The rule that separate written documents between the same parties and relating to the same subject-matter as indicated by the language contained therein, *or satisfactorily proved by the circumstances under which they are executed*, are to be construed together as one transaction, has been determined by so many authorities there is no room for controversy regarding that principle." (*Lynch* v. *Bank of America*, 2 Cal.App.2d 214, 223 [37 P.2d 716].) (Emphasis added.) The decisions relied upon by the defendants, including the *Estate of Gaines*, 15 Cal.2d 255, 264 [100 P.2d 1055], are not in conflict with the foregoing.

Likewise, the general principle under consideration applies whether each of the several instruments was signed by all or only by some of the parties to the transaction (*Mayers* v. *Loew's Inc.*, 35 Cal.2d 822 [221 P.2d 26], which holds that a letter signed by one party and a bulletin signed by another party should be considered along with a written agreement between them; *Symonds* v. *Sherman*, 219 Cal. 249, [26 P.2d 293], where a promissory note signed by the payor and a memorandum signed by the payee were considered together; *Tuso* v. *Green*, 194 Cal. 574, 581 [229 P. 327], involving separate escrow instructions directed to an escrow holder respectively signed by buyer and seller only; *Roberts* v. *Security Trust & Sav. Bank*, 196 Cal. 557, 563-566 [238 P. 673] which considered a surety bond, issued by a surety company on behalf of a contractor, incorporating by reference a contract signed by the contractor and the owner; similar situations were presented in *W. P. Fuller & Co.* v. *Alturas School Dist.*, 28 Cal.App. 609, 612 [153 P. 743], and *Callan* v. *Empire State Surety Co.*, 20 Cal.App. 483, 486 [129 P. 978] ; *Citizens Nat. Trust & Sav. Bank* v. *Beverage Co.*, 126 Cal.App. 550, 553 [14 P.2d 821], where two leases signed by one party were considered with a subscription agreement signed by the other party; *Storm & Butts* v. *Lipscomb*, 117 Cal.App. 6 [3 P.2d 567], in which a bid, an original contract, plans and specifications furnished by owner to original contractor, a subcontract, and a surety bond on the subcontract, were all considered together, although each did not have the signatures

of all parties; and *Beedy* v. *San Mateo Hotel Co.*, 27 Cal.App. 653, 661 [150 P. 810], involving two instruments, one of which was signed only by one of the parties.)

The general subject matter of the transaction may be identified by referring to all of the instruments executed in connection therewith, even though the subject matter specifically described in each instrument may differ. (*People* v. *Ganahl Lumber Co.*, 10 Cal.2d 501, 507 [75 P.2d 1067]— Lease of real property and agreement for use of spur track; *Torrey* v. *Shea*, 29 Cal.App. 313, 315 [155 P. 820]—Three written contracts for sale of hops, each contract covering the crop for a different year.)

Applying the rule codified by section 1642 of the Civil Code as a rule of exclusion, the defendants contend that separate ''contracts'' may not be considered together unless each contract so considered is signed by the same parties and identifies the same subject matter, and on this basis, claim that the finding and conclusion of the trial court upon the issue under consideration were erroneous. An application of the foregoing rules to the facts in this case adversely disposes of this contention. ''Copperstate'' desired to purchase the total ownership of the ''Harm Interests'' and the ''Frasher Estate'' in the trucking business conducted as a joint operation by the two corporations and the copartnership; during the negotiations a single purchase price was quoted by the owners; the three instruments in question were executed to effect this total acquisition; neither would have been executed without the other; each expressly referred to the total acquisition and to each agreement as part of one transaction; each made compliance with the other agreements conditions precedent ''to the obligation of either party to perform.'' In the return of sale filed by the executors of the ''Frasher Estate'' the three agreements were attached as exhibits, and it was alleged that ''the transactions'' set forth in each of the exhibits ''are interrelated and interdependent and the consummation of the transaction set forth in each exhibit is dependent upon the consummation of the transaction set forth in each of the other exhibits''; the probate court, in its order of confirmation, found that all of the allegations in the return of sale were true; and this court, in its decision on the appeal from the judgment in the action by ''Copperstate'' against the ''Frasher Estate'' noted the fact that all three contracts ''constituted in effect a single agreement to sell since by their terms if one fails for any reason all must fail.'' From the

testimony relating the negotiations preliminary to execution of the three ''agreements'' as well as from recitals therein, it is apparent that the parties thereto were engaged in a single transaction and that each of said agreements related to the same matter, i.e., the acquisition by ''Copperstate'' of the total holdings of the ''Harm Interests'' and the ''Frasher Estate'' in the trucking business in question. We hold that the findings of the trial court are supported by the evidence and its conclusions of law in the premises are correct.

The defendants cite *Hyde* v. *City of Santa Cruz,* 116 Cal. App. 333 [2 P.2d 560], and cases therein cited in support of their contention. These cases must be considered in connection with the facts there under review (*McDowell & Craig* v. *City of Santa Fe Springs,* 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344]; *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762, 769 [327 P.2d 111]) and, as so considered, are not controlling in the case at bar. ▇ Defendants place considerable emphasis on the finding, which they state was made at their request, that neither of the plaintiffs was a ''party or signatory'' to the ''agreement of sale of stock'' made by the executors with ''Copperstate,'' and that none of the defendant executors was a ''party or signatory'' to the ''agreement of sale of stock'' made by the plaintiffs with ''Copperstate.'' In the light of the whole record, we conclude that the term ''agreement'' as used in this finding is synonymous with the term ''instrument.'' The court further found that the sale transaction in question was expressed in three separate written contracts; found as untrue the allegations in defendants' answer that the three contracts evidenced three separate and different transactions; found that each of the contracts referred to was, by its own terms, made dependent upon the others; and concluded that the three contracts expressed one transaction. In its minute order opinion the court indicated its intention to find that there was ''one transaction expressed in three contracts, mutually integrated and interdependent.'' ▇▇ On appeal, the written opinion of the trial court may be used to clarify and interpret its findings. (*Arvin-Kern Co.* v. *B. J. Service, Inc.,* 178 Cal.App.2d 783, 793 [3 Cal.Rptr. 238]; *Trans-Oceanic Oil Corp* v. *Santa Barbara,* 85 Cal.App.2d 776, 790 [194 P.2d 148].) ▇ In the light of the whole record, the findings before us are reasonably clear and fully support the conclusion drawn therefrom.

▇ In substance, the transaction in question involved a sale by three different sellers to one buyer; each seller agreed

to sell certain specifically described property as a part of a total sale; and each agreed that performance by the buyer was contingent upon performance by all three sellers. The promise of each seller was directed not only to the buyer, but also to the other sellers. There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. (*Brown* v. *Superior Court,* 34 Cal.2d 559, 564 [212 P.2d 878] ; *Nelson* v. *Abraham,* 29 Cal.2d 745, 751 [177 P.2d 931] ; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 771 [128 P.2d 665] ; *Van Houten* v. *Whitaker,* 169 Cal.App.2d 510, 516 [337 P.2d 900] ; *Milton* v. *Hudson Sales Corp.,* 152 Cal.App.2d 418, 427 [313 P.2d 936] ; *New* v. *New,* 148 Cal. App.2d 372, 382 [306 P.2d 987] ; *Bergum* v. *Weber,* 136 Cal. App.2d 389, 392 [288 P.2d 623] ; *Matzen* v. *Horwitz,* 102 Cal.App.2d 884, 892 [228 P.2d 841] ; *Orton* v. *Embassy Realty Associates, Inc.,* 91 Cal.App.2d 434, 438 [205 P.2d 427].) This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. (*Bewick* v. *Meecham,* 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277] ; *Orton* v. *Embassy Realty Associates, Inc., supra,* 91 Cal.App. 2d 434, 438.)

 In refusing to complete the sale on September 1, 1954, the executors of the ''Frasher Estate'' breached the foregoing duty which they owed the ''Harm Interests'' under the contract of sale evidenced by the three agreements heretofore considered.

 Defendants contend that the complaint does not allege any promise by the ''Frasher Estate'' to the ''Harm Interests.'' Such an allegation was unnecessary to the statement of a cause of action. The complaint alleged the execution of the three agreements as part of one transaction, incorporated the provisions thereof by reference, and attached them thereto as exhibits. From such allegations the existence of the implied covenants heretofore considered is established as a matter of law. The record plainly indicates that all parties to the action were fully aware of their respective contentions. The defendants' objection to the pleading is without merit.

Our conclusion on the issue of liability renders unnecessary a consideration of the contentions made by defendants respecting the effect of the judgment in the case of *Consolidated*

*Copperstate Lines* v. *Frasher,* 141 Cal.App.2d 916 [297 P.2d 692]. Likewise, in the light of what has heretofore been stated, defendants' argument respecting the nature of the statements contained in the return of sale filed by the executors with the probate court, whether they be statements of fact or conclusions of law, is not material to a disposition of the issues on appeal.

Defendants further contend that the trial court applied an erroneous measure of damages in arriving at the amount of the judgment against them. As a result of the "Frasher Estate's" refusal to proceed with the sale on September 1, 1954, the plaintiffs' receipt of the cash payment and the promissory note, tendered to them by "Copperstate" on that date, was delayed until August 7, 1956, a period of 23 months and 7 days. If the "Frasher Estate" had not refused to proceed on the former date, the plaintiffs would have had possession of $163,871.95 in cash, less an amount hereinafter noted, together with the promissory note for $233,733.10, payable in six equal annual installments, bearing interest at the rate of 5 per cent per annum on the unpaid balance. The court awarded plaintiffs damages in a sum equal to 7 per cent per annum on the foregoing amounts for the period of 23 months and 7 days.

The defendants contend that the court should have used the contract interest rate of 5 per cent per annum in computing the damages awarded. They base this contention upon the rule that the "legal rate of interest stipulated by a contract remains chargeable after the breach thereof, as before, until the contract is superseded by a verdict or other new obligation." (Civ. Code, § 3289.) The obvious fallacy of this contention is that the plaintiffs are not suing the party who agreed to pay 5 per cent interest on the purchase price. The measure of damages applicable to the breach of covenant is that provided by section 3300 of the Civil Code, i.e., ". . . the amount which will compensate the party aggrieved for all detriment proximately caused" by the breach "or which, in the ordinary course of things, would be likely to result therefrom." In substance, the trial court determined that the detriment caused the plaintiffs by the delay in their receipt of the cash payment was the loss of use of that payment for the period of the delay, i.e., 23 months and 7 days. The court proceeded in like manner in determining the detriment caused by the delay in delivery of the promissory note, which resulted in delaying the payments thereunder for a like period of time and deprived

plaintiffs of these payments for that time. The promissory note was payable in six equal annual installments, the first of which was payable one year after closing date. Receipt of the first payment was delayed for the period of 23 months and 7 days. Each subsequent annual payment was delayed for a like period of time. Plaintiffs are, or will be, deprived of the use of their money for the period of the delay. In each instance, the delay in payment was caused by the refusal of the "Frasher Estate" to complete the sale. Except for this refusal the plaintiffs would have had the use of the money payable to them for an additional period of 23 months and 7 days. The award of a sum equal to the prescribed legal rate of interest on that part of the cash payable to plaintiffs and upon the principal amount of the promissory note, for the time plaintiffs were or will be deprived of the use thereof, was reasonable and proper. (Cal. Const., art. XX, § 22; *State of California* v. *Day,* 76 Cal.App.2d 536, 554 [173 P.2d 399].)

The defendants make a valid objection to the amount of the award with respect to the amount of damages arising out of the delay in receipt of the cash payment. As noted, plaintiffs claim that "Copperstate" tendered them $163,871.95 on September 1, 1954, and base their claim of damage on the loss of use of the whole of this sum. However, the undisputed evidence shows that this sum includes $62,553.69 which was claimed by the plaintiff Hattie Harm as her share of the purchase price of the Terminal Warehouse business. The complaint alleges that the defendants, as executors of the Frasher Estate, and the plaintiff Hattie Harm, owned this business as copartners. This allegation is admitted by the answer. It appears, therefore, that a copartnership was one of the parties to this transaction; that the copartnership agreed to sell its business; and that the purchase price for that business was payable to that copartnership. The plaintiff Hattie Harm claims that she was entitled to one-half of the money payable to the copartnership. Whether this be so or not is a matter subject to agreement or to a partnership accounting, and there is no evidence of such as of September 1, 1954. Moreover, the plaintiff, George Robert Harm, had no interest in the partnership funds and would not be entitled to a judgment on account thereof. The damages awarded plaintiffs for loss of use of the partnership funds was improper. The defendants, in their brief, state this amount is $8,240.86. Plaintiffs do not deny the accuracy of this statement. Judgment was entered in favor

of the plaintiffs in the sum of $52,915.27. This sum should be reduced to $44,674.41.

At the time of trial, the plaintiffs moved for permission to file an amendment to their first amended complaint increasing their demand for damages to the amount eventually awarded by the court. This motion was taken under submission. The defendants comment upon the absence from the record of any order granting this motion. However, as the amendment was filed, the court made its decision thereon, and found the allegations therein to be true, it will be assumed, nothing in the record appearing to the contrary, that permission to file the same was granted.

The judgment in this matter directed recovery from all four named defendants in their individual capacities and, additionally, from the defendants Frasher in their representative capacity as executors. The defendants Isabelle F. Frasher and Morris A. Atkins contend that, in any event, the judgment should not be against them individually; an amicus curiae on behalf of an heir in the Frasher estate, and the defendant Ernest E. Frasher, contend that the judgment should not be against the named defendants as executors; and the plaintiffs contend that the judgment against the defendants in both their individual and representative capacities is proper. The complaint herein states two causes of action; one against the defendants as executors and the other against the defendants as individuals; but each containing the same allegations.

Following execution of the three instruments heretofore considered, the executors presented a return of sale to the probate court, together with a petition seeking confirmation thereof. To this return and petition, these three instruments were attached as exhibits, and it was alleged that the transactions set forth therein were "interrelated and interdependent and the consummation of the transaction set forth in each exhibit is dependent upon the consummation of the transaction set forth in each of the other exhibits." The court found all of the allegations contained in the return and petition to be true; entered its order approving the sale to "Copperstate" on the terms and conditions set forth in the exhibits signed by the executors but made no specific order approving the transaction as a whole. Thereafter the executors refused to proceed with the sale; "Copperstate" brought an action against them to enforce the same; and judgment in its favor resulted, which was affirmed on appeal. (*Consolidated Copperstate Lines* v. *Frasher*, 141 Cal.App.2d 916 [297 P.2d 692].) There is no

showing that the executors, in refusing to complete the sale, or in contesting the action by "Copperstate" were acting under orders of the probate court.

As "a general proposition the only obligations which an executor . . . may create against an estate are those which are authorized by the will of decedent or by statute." (*Moss* v. *Boyle,* 44 Cal.App.2d 410, 413 [112 P.2d 657]; cf. *First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com.,* 213 Cal. 322, 325 [2 P.2d 347, 78 A.L.R. 1324]; *Estate of Ward,* 127 Cal.App. 347, 357 [15 P.2d 901]; *Henderson* v. *Riggles,* 110 Cal.App. 320, 322 [294 P. 31]; *Riedy* v. *Bidwell,* 70 Cal. App. 552, 555 [233 P. 995]); he cannot, by virtue of his general powers as such, make any contract which will bind the estate he represents or create any liability which will authorize a judgment against that estate (*Sterrett* v. *Barker,* 119 Cal. 492, 495 [51 P. 695]; *First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com.,* 213 Cal. 322, 325 [2 P.2d 347, 78 A.L.R. 1324]; *California Emp. etc. Com.* v. *Hansen,* 69 Cal.App.2d 767, 770 [160 P.2d 173]; *Moss* v. *Boyle,* 44 Cal.App.2d 410, 413 [112 P.2d 657]; *Southern Pacific Co.* v. *Swanson,* 73 Cal. App. 229, 235 [238 P. 736]; *Renwick* v. *Garland,* 1 Cal.App. 237, 238 [82 P. 89]; *Hickman-Coleman Co.* v. *Leggett,* 10 Cal.App. 29, 31 [100 P. 1072]); and the estate cannot be held liable for the breach of a contract so entered into by him. (*Sterrett* v. *Barker, supra,* 119 Cal. 492, 494.) As a corollary to these rules, it is held that the executor is personally liable on contracts so made by him (*Sterrett* v. *Barker, supra,* 119 Cal. 492, 495; *Maxon* v. *Jones,* 128 Cal. 77, 81 [60 P. 516]; *Moss* v. *Boyle,* 44 Cal.App.2d 410, 413 [112 P.2d 657]; *Henderson* v. *Riggles,* 110 Cal.App. 320, 322 [294 P. 31]), unless he avoids "personal liability by special agreement with the creditor for the latter to expect payment only from the estate." (*Moss* v. *Boyle,* 44 Cal.App.2d 410, 413 [112 P.2d 657].) However, the executor may be reimbursed out of estate assets for a liability incurred on account of necessary matters related to the estate. (*First Nat. Trust & Sav. Bank* v. *Industrial Acc. Com.,* 213 Cal. 322, 323 [2 P.2d 347, 78 A.L.R. 1324]; *Sterrett* v. *Barker,* 119 Cal. 492, 495 [51 P. 695]; *Moss* v. *Boyle,* 44 Cal.App.2d 410, 413 [112 P.2d 657]; *Hickman-Coleman Co.* v. *Leggett,* 10 Cal.App. 29, 32 [100 P. 1072].) These rules apply even though the executor acts in the interest and for the benefit of such estate, and although he is identified in the transaction as a personal representative. (*First Nat. Trust & Sav. Bank* v. *Industrial*

*Acc. Com.,* 213 Cal. 322, 325 [2 P.2d 347, 78 A.L.R. 1324]; *Southern Pacific Co.* v. *Swanson,* 73 Cal.App. 229, 234 [238 P. 736].) ▮▮▮▮ Persons dealing with an executor act with knowledge of the limitations upon his authority. *(Estate of DeRome,* 175 Cal. 399, 401 [165 P. 919].)

▮▮▮▮ The executors in the case at bar were authorized by will and by law to sell the estate's interest in the trucking operation (Prob. Code, §§ 754, 757), subject to confirmation by the probate court. (Prob. Code, §§ 755, 757.) It appears that attempts to sell this interest were unsuccessful until the estate joined with the "Harm Interests" and the joint sale of their total ownership was negotiated with "Copperstate." *(Consolidated Copperstate Lines* v. *Frasher,* 141 Cal.App.2d 916, 918 [297 P.2d 692].) The three instruments executed by all of the parties in connection with this transaction were submitted to the probate court with the executors' return of sale and petition for confirmation, which alleged that each of these instruments was "interrelated and interdependent." Upon this return and petition for confirmation that court approved the sale. The contention of the defendants that the court did not approve all parts of the transaction to which the executors were a party, but only that part involving the promises between them and "Copperstate," is without merit. The various promises of the sellers and the buyer, both expressed and implied, were parts of a single transaction. In executing the contract to sell the estate's interest in the trucking operation, the executors were not acting under their general powers as such but pursuant to the authority conferred upon them by will, by statute and by order of the probate court. Under these circumstances they are liable in their representative capacity for any breach of that contract. They were required to perform it as executors and their failure to perform it was a failure as executors. The action by "Copperstate" to enforce the contract of sale was against the defendants as executors, and the judgment of the court in that action was against the defendants as executors. In substance, the contract of sale was the contract of the estate; the estate breached the contract; and the estate is liable for such breach.

In support of their position that the defendants were not liable in their representative capacity, amicus curiae and counsel for the defendant Ernest E. Frasher, cite such cases as *Johnston* v. *Long,* 30 Cal.2d 54 [181 P.2d 645]; *Mathew* v. *Mathew,* 138 Cal. 334 [71 P. 344]; *Abbey* v. *Schaefer,*

108 Cal.App.2d 554 [239 P.2d 44]; *Monahan* v. *Blossom,* 88 Cal.App.2d 951 [199 P.2d 738], and *Rapaport* v. *Forer,* 20 Cal.App.2d 271 [66 P.2d 1242], which declare the non-responsibility of an estate and the individual liability of an executor for damages arising from torts committed by him. These cases are not applicable to the cause of action seeking recovery from the defendants as executors of the "Frasher Estate." Therein the plaintiffs are suing for damages arising from a breach of contract, i.e., the estate's contract, and not for damages arising from the commission of a tort. Also cited are *Sterrett* v. *Barker,* 119 Cal. 492 [51 P. 695]; *Schlicker* v. *Hemenway,* 110 Cal. 579 [42 P. 1063, 52 Am. St.Rep. 116]; and *Renwick* v. *Garland,* 1 Cal.App. 237 [82 P. 89], which state the general rule heretofore noted respecting the right to recover against an estate on obligations arising out of an exercise of the general powers of an executor, and do not control the decision in the case at bar. The contention that the defendants are not liable in their representative capacity is without merit.

 This conclusion leaves for consideration the alleged individual liability of the defendants for damages arising out of their failure to act as executors and to consummate the sale. The order of the probate court approving the sale "authorized, empowered and *directed*" the executors to execute and deliver the necessary instruments of transfer and other documents required by the agreements. (Emphasis added.) In due course, this order became final, and was not subject to collateral attack. (*Consolidated Copperstate Lines* v. *Frasher,* 141 Cal.App.2d 916, 926 [297 P.2d 692]; *Estate of Gump,* 16 Cal.2d 535, 549 [107 P.2d 17].) The terms contained in the contract with "Copperstate" and the "Harm Interests" together with the order of approval and direction by the trial court required the defendants to proceed with the sale. Without court sanction they refused to proceed and thus provoked the damage caused by the breach of the contract between the estate and the "Harm Interests." The duty imposed upon the defendants as individuals, to discharge their obligation as executors, was owed to the plaintiffs as obligees of the estate. For damage arising out of the failure to comply with an order of court the executors are individually liable. (*Melone* v. *Davis,* 67 Cal. 279, 281 [7 P. 703]; *St. Mary's Hospital* v. *Perry,* 152 Cal. 338, 340 [92 P. 864].)

 However, the fact that the defendants are indi-

vidually chargeable with their neglect of duty, and the damages caused plaintiffs thereby, does not affect the responsibility of the estate for the breach of contract made on its behalf. The liability of the defendants as individuals is not based upon their breach of the contract, but upon their refusal to obey the court order which resulted in the estate's breach of the contract. The plaintiffs should not be required to elect between the defendants as individuals or the defendants as executors in seeking compensation for the damage they have sustained. The liability or nonliability of the defendants as individuals to the ''Frasher Estate,'' arising out of their refusal to proceed as directed, is a matter of consideration for the probate court, and is not a subject for consideration in this proceeding.

In accordance with our decision on the issue of damages, the judgment is modified by reducing the amount of damages to the sum of $44,674.41, and as so modified, the judgment is affirmed. Appellants to recover costs on appeal.

Griffin, P. J., concurred.

A petition for a rehearing was denied June 21, 1960, and appellants' petition for a hearing by the Supreme Court was denied July 20, 1960.